BISHOP *against* ELY AND OTHERS.,

Bishop
v.
Ely.

A. lent his waggon to B. & C. who put their own horses to it; and A. at the invitation of B. and C., rode with them in the waggon. B drove the waggon, and run with so much violence against the horse of D., who was before on the road, and had turned out, that the horse was wounded by the *tongue* of the waggon of A., and soon after died In an action of *trespass* bro't by D. against A., B. and C., it was held, that A. was not a mere passenger; but equally liable with B. and C. for a joint trespass.

THIS was an action of trespass, brought against the defendant for driving against the horse of the plaintiff, on the highway, so forcibly that the tongue of the defendants' waggon pierced the breast of the plaintiff's horse, in consequence of which he died.

*Ely*, one of the defendants, pleaded not guilty, and that he was a mere passenger in the waggon. The other two defendants suffered judgment by default to be entered against them. The cause was tried at the *Washington* circuit, before Mr. Justice *Yates*, in *June*, 1812.

A witness for the plaintiff testified, that he was with the plaintiff, and hearing a waggon coming rapidly on the road, advised the plaintiff to turn out of the road, which he immediately did, quite out of the road to the right, when the tongue of the waggon of the defendants struck the breast of the plaintiff's horse with great force, and when the plaintiff said he hoped nothing was hurt, one of the defendants abused him for not keeping out of the road.

Another witness saw the defendants at a tavern, about half a mile from the place where the plaintiff's horse was injured, and they were in high spirits, and talking of what had happened. *Ely* said to one of the defendants, he must take care how he run against people. The horse died of the wound he received.

The waggon belonged to *Ely*, and the horses to the other defendants, one of whom (*A.*) was driving the waggon when the plaintiff's horse was hurt. *Ely* was asked by the other defendants to go with them in the waggon.

The jury found a verdict for the plaintiff, against *Ely*, as equally guilty with the other defendants.

A motion was made to set aside the verdict, and for a new trial.

*Crary*, for the defendants, contended, that *Ely* had done no act that could make him a trespasser. He was a mere passenger in the waggon, and had no control over the horses. To make a person liable, in such case, it must be shown that he was driving the waggon or carriage. Would a passenger in the public stage coach be liable as a trespasser, if the driver should run against another carriage?* It does not appear that *Ely* was in any way consenting to the trespass, or that he could have prevented it.

* 5 *Esp. Rep.* 18. 1 *East*, 106.

*Z. R. Shepherd,* contra, insisted that *Ely* was not a mere passenger. He was the owner of the waggon, and being in it at the time, he must be considered as a party to the trespass. He was one of the company in the waggon, and present at the time the trespass was committed; and if liable at all, it must be in an action of trespass.\*

In the case of *M'Manus* v. *Cricket,* (1 *East,* 106.) the master was not present, and it was, therefore, held, that he could not be liable as a trespasser.

*Per Curiam.* Here was evidence sufficient to charge all the three defendants with a joint trespass. They were all together in the waggon, and each had his due share of interest in the horses and waggon. *Ely* owned the waggon, and was not in the light of a mere passenger. The case of *Davey* v. *Chamberlain* (4 *Esp. N. P.* 229.) applies. It does not appear that *Ely* dissented, at the time, from the violent manner of driving the team, nor at the time of the accident; and when seen, shortly after, at the tavern, he acted as one of the party, jointly concerned in the act, for they were all in high spirits, and he expressed no dissent, or even regret.

Motion denied.