# White Mountains Railroad Co. *v.* Eastman, Adm'r.

It is no sufficient ground for excluding a witness from testifying for a corporation, that he may be liable for the debts of the corporation on account of his having been a stockholder therein, under the statute giving a remedy to the creditors of the corporation in certain specified cases, and upon particular proceedings prescribed for the recovery of their debts against the stockholders personally.

The records kept by the clerk of a railroad corporation of the proceedings of the directors in ordering assessments upon the shares in the capital stock, may be used as evidence by the corporation in a suit brought by them to recover an assessment upon the shares subscribed for by the defendant; he being one of the original grantees in the charter, and a director at the time the assessment was ordered, and having exercised the privileges of a stockholder, in virtue of the shares upon which the assessment was made.

A secret agreement, entered into between the directors of such corporation and a subscriber for shares in its capital stock, that he may within a specified time reduce the number of shares thus subscribed for, the subscription being held out as *bona fide* for the full amount, in order to induce others to become subscribers, is void, as a fraud upon the other subscribers; and the original subscription may be enforced for its full amount between the corporation and subscriber.

Where the charter of a corporation limits the capital stock to not less than five hundred nor more than ten thousand shares, of one hundred dollars each, and authorizes the directors to assess upon five hundred shares as soon as subscribed for, and from time to time to enlarge the capital up to the maximum limit, all the shares to be equally assessed, it is not necessary for the corporation to determine the ultimate amount of its capital within the limit of the ten thousand shares, before proceeding to make assessments upon the first five hundred subscribed for.

Nor is it necessary, in order to entitle the corporation to recover the assessments so made, that notice should have been given to the governor, of the assessments, according to the provisions of the third clause of sec. 2 of the act of 1846, in amendment of the law relating to corporations.

An action may be maintained by a corporation, upon a promise by a subscriber for shares in its capital stock, contained in his subscription to pay the assessments upon them as ordered, notwithstanding the charter empowers the directors to sell the shares for the non-payment of the assessments.

Claims allowed against an estate under a commission of insolvency, for which the intestate was the surety of a third person, are not to be considered in determining the amount of the claim by such third person against the estate under the commission. The dividend which the administrator may pay upon the claims for which the intestate was surety, will be a set-off in the hands of the administrator against the dividend, to be paid upon the claim of the principal.

This is an appeal from the report of the commissioner of insolvency upon the estate of Ebenezer Eastman, allowing to the

White Mts. Railroad *v.* Eastman.

plaintiffs the sum of $2,642.12 as the amount of their claim against his estate.

Various matters of account and set-off were embraced in the suit, but, upon the trial in the Court of Common Pleas, the only matter in controversy was as to the liability of the estate in the hands of the administrator defendant, to pay the assessments on thirty shares of the capital stock of the corporation plaintiff.

It was agreed that if the plaintiffs were entitled to recover the assessments on thirty shares, the verdict should be for the plaintiffs for the sum of $2,820.42, including interest to the 28th of April, 1855; that if the plaintiffs were entitled to recover the assessments on five shares only, the balance due to the defendant on that day was $147.13, and that if the plaintiffs were not entitled to recover assessments on any of the shares, the balance due to the defendant on that day was $569.63. It was admitted that the corporation was duly chartered and organized, and that five hundred shares were subscribed for before any assessments were made.

By section 2 of the charter it is provided that, upon five hundred shares being subscribed for, the corporation may proceed to make assessments thereon, and call in the same and commence building their road, and that they may enlarge the capital by new subscriptions for shares, as needed in the progress of the work, for completing the road, and from time to time may assess all the shares subscribed for equally, to carry on and complete the work. Section 5 of the charter authorizes the president and directors for the time being, to exercise all the powers granted to the corporation for the purpose of constructing and completing the road, and for the purposes of transporting persons and freight, and the management of the affairs of the corporation; to make such equal assessments from time to time on all the shares as they may deem expedient, and direct the same to be paid to the treasurer; and provides that if any subscriber shall neglect, for sixty days after notice from the treasurer, to pay his assessments, the directors may order the treasurer to sell the shares of the delinquent subscriber at public auction, and

the subscriber shall be accountable for any deficiency of the amount realized from the sale to pay the assessments, and interest, and costs of sale, and that assessments shall not be laid to a greater amount than one hundred dollars on a share ; and if any greater amount shall be needed to complete the road, that it shall be raised by new shares — (the stockholders having the right to take such new shares) — in proportion to the amount of old shares held by them respectively ; and section 7 empowers the corporation to establish such by-laws, rules and regulations as they shall deem necessary to carry into effect the purposes of the charter, the same not being repugnant to the laws of the State.

A code of by-laws was adopted by the corporation on the 6th of February, 1849, by the 10th article of which it is provided that the clerk shall attend the meetings of the corporation, and of the directors, respectively ; shall be sworn to the faithful discharge of his duties, and shall keep a record of all votes of the corporation and of the directors.

The defendant's intestate, Ebenezer Eastman, on the 5th of April, 1849, subscribed a writing, contained in the book of subscription for stock, of which the following is a copy : " *White Mountains Railroad :* We, the subscribers, agree to take of the capital stock in the White Mountains Railroad the number of shares set against our respective names, said shares being $100 each, and to pay the same to the treasurer of the corporation as ordered by the directors ; and if not paid as assessed, we agree to pay interest on the same from the assessments ; and if paid faster, we are to receive credit for the interest up to the assessments of the stock subscribed for towards new stock." Against the name of said Eastman was entered, " thirty shares."

Wm. H. Cummings, a witness introduced by the plaintiffs, being examined on the *voir dire,* testified that he owned stock in the corporation until within the last two or three weeks ; that he was clerk of the corporation ; that the whole indebtedness of the corporation, exclusive of mortgage bonds, was about $130,000 ; that the mortgage bonds, on which the stockholders were not in-

dividually liable, amounted to about $90.000, and that there had been a vote of the directors that all debts contracted by the corporation should be made subject to the same condition. The defendant objected that the witness was interested, but he was admitted by the court.

The witness produced and identified the books of record of the corporation. The defendant objected to the admission of the books, but they were admitted, subject to the exception.

From the books it appeared that thirteen assessments were ordered by the directors, the first being made on the 18th of February, 1851, and the last on the 31st of May, 1852 ; amounting in the whole to $100 on a ·share, of which due notice was given said intestate ; and it appeared that he acted as one of the directors of the corporation during the time of making these different assessments, and was present at the meetings of the board when ten of the thirteen were ordered.

The defendant introduced in evidence a paper signed by the then clerk of the corporation, of which the following is a copy : " In consideration that Ebenezer Eastman will subscribe for thirty shares in the White Mountains Railroad, per request of said corporation, the corporation agree to release him from twenty-five of said shares, or such portion of said twenty-five shares as he or his heirs, executors or administrators, may, within one year, elect to withdraw from his said subscription ; and if he has been assessed and has paid anything on those shares that he elects to be released from, those payments shall be allowed him on the shares that he retains in said corporation, and the treasurer shall regulate his stock accounts and assessments accordingly. In witness whereof the clerk of said corporation, by order of the directors, sets his hand, this 5th of April, 1849."

This evidence was objected to by the plaintiffs, but admitted by the court. It was agreed that said clerk, if the testimony were admissible, would testify that he executed said paper in pursuance of a vote of the directors at a meeting held on the day of its date, at which Eastman was present, but which vote was not recorded, and no persons were present excepting the

directors and said clerk. To this testimony the plaintiffs objected that a vote of the directors could only be proved by the record; but the testimony was admitted.

It was further agreed, if the testimony was admissible, that said clerk would testify that the subscriptions of the directors were so taken, in order to show as large a subscription as possible at a hearing before the railroad commissioners upon the question of the location of the road, between this and another railroad corporation, and also to induce other persons to subscribe. This evidence was objected to by the plaintiffs, but admitted by the court, subject to the exception.

It appeared that debts amounting to $8,000, on which the said Eastman was liable with other individuals, as the surety of the corporation, had been proved and allowed before the commissioner of insolvency on the estate of said Eastman. The evidence to prove this fact was objected to by the plaintiffs, but admitted, subject to the exception.

It further appeared that the corporation had never fixed and limited its capital stock, and that no notice had ever been given to the Governor of the amount of assessments, and of the debts and assets of the corporation, as specified in the 3d clause of the 10th section of the 147th chap. of the Compiled Statutes. This evidence was also objected to by the plaintiffs, but admitted by the court, subject to the exception.

It also appeared from the records, that the directors, by votes in March of each year, from 1850 to 1853 inclusive, extended the time from year to year for the election to be made by the directors whether they would or not diminish the number of shares for which they would be accountable on their respective subscriptions; and it was admitted that prior to April, 1854, the defendant, as administrator of said Ebenezer Eastman, he having deceased, gave notice to the corporation of his election not to take twenty-five of the thirty shares subscribed for by him.

The plaintiffs introduced the record of the proceedings of the directors at the meeting held on the 5th and 6th of April, 1849, which is as follows: "The directors met on the 5th and

6th of April, 1849, at the inn of Mr. Gordon, at the Upper Village, in Bath, and after taking measures to increase the subscription list for stock, and for transacting other business not necessary to be recorded, adjourned."

It also appeared that said Eastman, at the election of directors in 1852, voted upon said thirty shares for directors.

James P. Webster, a witness for the plaintiffs, testified that in 1850 or 1851, Eastman solicited him to subscribe for stock, and said that he had subscribed for thirty shares ; and other witnesses testified that after the subscription of Eastman they subscribed for shares, with the knowledge of his subscription, but with no knowledge of the writing taken by him, signed by the clerk, and that they had paid their subscriptions ; and from the testimony of said Cummings it appeard that in the fall of 1851 Eastman said he was satisfied the directors would all have to pay the full amount of their subscriptions ; that he was willing to pay his if the rest would, and he thought that was the better way.

A verdict was taken, by consent, for the plaintiffs for the sum of $2,820.42, on which judgment is to be rendered if the court shall be of the opinion that the plaintiffs are entitled to recover the assessments on the whole thirty shares.

*H. & G. A. Bingham*, for the defendant.

This is an action that proposes to take, in behalf of a remedilessly bankrupt and insolvent corporation, the last pittance that withholds a helpless widow and two orphan female children from absolute want and poverty.

1. In the first place, we say that this action cannot be maintained, because neither the charter of the corporation nor the express promise contained in the subscription authorizes it. It must have one or the other to support it, or else the action must fall to the ground. The charter authorizes the sale of the shares for the non-payment of the assessments, and that remedy must be pursued. *Franklin Glass Co.* v. *Alexander*, 2 N. H. 380 ; *Turnpike Co.* v. *May*, 7 Mass. 102 ; *Same* v. *Adams*, 8 Mass.

138 ; *Same* v. *Lock*, 8 Mass. 268 ; *Same* v. *Swan*, 10 Mass. 384 ; *Franklin Glass Co.* v. *White*, 14 Mass. 286 ; Angell and Ames on Corp. 489–496 ; *Portland, Saco, &c., R. R.* v. *Graham,* 11 Met. 1.

2. The case finds that the capital stock of the corporation has never been fixed, and for this reason we say the plaintiff cannot recover. The subscription is in the words, " We, the subscribers, agree to take of the capital stock of the White Mountains Railroad," &c. Is not this an agreement to take a certain portion of a fixed quantity, and not of an uncertain, indefinite quantity, and can the corporation proceed to make and collect assessments by virtue of this subscription, before fixing their capital stock ? We think not. *Littleton Manufacturing Co.* v. *Parker*, 14 N. H. 543 ; *Lexington and West Cambridge R. R.* v. *Chandler*, 13 Met. 311 ; *Salem Mill Dam Corp.* v. *Ropes*, 6 Pick. 23 ; *Same* v. *Same*, 9 Pick. 187 ; *Central Turnpike Corp.* v. *Valentine*, 10 Pick. 142 ; *Proprietors of Newburyport Bridge* v. *Story*, 6 Pick. 45 ; *Gray* v. *Portland Bank*, 3 Mass. 364 ; Angell & Ames on Corp. 486 ; Compiled Statutes, chap. 147, sec. 1.

The annual notice to the Governor, of all assessments, &c., required by Compiled Statutes, chap. 147, has not been given. If this neglect does or does not vitiate the assessments, in either event it is a pregnant piece of evidence, showing the loose, reckless and lawless manner in which the affairs of this corporation have been conducted.

3. William H. Cummings was improperly admitted as a witness. *Dearborn* v. *B., C. & M. R. R.*, 4 Foster 179. An unrecorded vote of a corporation may be proved by parol. *Edgerly* v. *Emerson*, 3 Foster 555.

4. If the subscription be held to be valid, then the written agreement, cotemporaneous with it and a part of the same transaction, must be held to be valid. The whole transaction must stand or fall at the same time. It cannot be divided. *Carleton* v. *Whicher*, 5 N. H. 196 ; *Roby* v. *West*, 4 N. H. 285 ; *Booth* v. *Hodgeon*, 6 T. R. 405 ; *Plumer* v. *Smith*, 5 N. H. 553.

Again : if the transaction be considered a fraud, then it is a fraud in which both are equally guilty, and no action can be sustained thereon by either party. *In pari delicto potior est conditio defendentis.* Chitty on Contracts C, 80 ; *Case* v. *Gerrish*, 15 Pick. 49 ; *Morris* v. *Gill*, 1 Chip. 49 ; *Smith* v. *Tubbs*, 10 Maine 71 ; *Waite* v. *Harper*, 2 Johns. 386 ; *Wiggin* v. *Bush*, 12 Johns. 306 ; *Tucker* v. *Smith*, 4 Greenl. 415 ; *Lyon* v. *Summers*, 7 Conn. 399 ; *Middlebury College* v. *Loomis*, 1 Vt. 189 ; *Lowell* v. *Boston and Lowell R. R.*, 23 Pick. 32 ; *White* v. *Hunter*, 3 Foster 128 ; *Nellis* v. *Clarke*, 20 Wendell 24 ; *Jackson* v. *Duchaire*, 3 T. R. 551 ; *Doe* v. *Martin*, 4 T. R. 39 ; *Hoit* v. *Holcomb*, 3 Foster 535 ; Comyn on Contracts, marginal, 58 ; *Ayer* v. *Hutchins*, 4 Mass. 370 ; *Willis* v. *Baldwin*, Douglas 433 ; *Lewis* v. *Gamage*, 1 Pick. 347 ; *Anthony* v. *Wilson*, 14 Pick. 303.

5. The books of the corporation were improperly admitted. The rule is, that the books of a private corporation are never evidence, except among the members ; not evidence for the corporation itself. 1 Greenl. Ev., p. 570, sec. 493 ; An. & Am. on Corp. 666, 667. And the doctrine that they are evidence among the members, is limited to matters pertaining to the rights of property, contracts, and their dealings.

*Rand*, for the plaintiffs.

The books of a private corporation are admissible as between the members. As to them, they are in the nature of public records, and all the members are chargeable with knowledge of the entries made in them. 1 Greenl. Ev., sec. 493. A copy of the record, certified by the clerk, is the proper evidence to prove the corporate acts recorded ; and if it be required to identify the original record, when produced instead of a copy, the testimony of the clerk is competent for that purpose, though it be in a suit in which the corporation is a party and he be a stockholder. *Wiggin* v. *Chinch*, 8 Met. 301 ; *Oaks* v. *Hill*, 14 Pick. 448 ; An. & Am. on Corp. 472 ; 14 Mass. 180.

The fraud in the secret proceedings relative to the subscrip-

tions of the directors was not the fraud of the corporation, but of the seven persons, who, acting as directors, collusively agreed among themselves to practice this fraud upon the other subscribers.

The paper signed by the clerk, stipulating that the intestate might repudiate his subscription in part, was given in pursuance of this fraudulent agreement, and cannot be considered the act of the corporation. The paper itself recognizes a *subscription* by the intestate for thirty shares, and as director the intestate voted ten times in fact to make assessments upon these as his thirty shares ; and at the annual meeting in February, 1852, he voted for directors on these as his shares. The maxim " *in pari delicto potior est conditio defendentis*," does not apply to this case. The intestate, because he, with his associates in the board of directors, committed a fraud upon the other subscribers, is not to be permitted to claim that he was acting in the commission of that fraud within the scope of his authority, and thus make it the fraud of the corporation. The fraud was one committed upon the other members of the corporation, and it would be absurd to hold that they — the victims of the fraud — are thus to be held responsible for it as *participes*.

A direct, open vote of the board of directors, without fraud, to release a subscriber from an unconditional subscription for stock, is beyond the scope of their authority, and not binding on the corporation. *George* v. *Harris*, 4 N. H. 553 ; *Trumbull* v. *Tilton*, 1 Foster 128; *Bryant* v. *Goodenow*, 5 Pick. 228 ; 5 Pick. 507 ; 6 N. H. 164 ; An. & Am. on Corp. (3d ed.,) 545.

The by-laws say the clerk shall record the votes of the directors. In *Edgerly* v. *Emerson*, 3 Foster 555, it is held that an unrecorded vote of the directors may be proved by parol ; but it did not appear in that case that it was made imperative that the votes of the directors should be entered of record. An. & Am. on Corp., chap. 9, sec. 3, part 1 and 2, and secs. 6 and 7.

The testimony of the clerk does not show a vote of the directors. He says only that he executed the paper in pursuance of the vote of the directors. The paper is admissible only as a

memorandum made by him at the time to show what the vote was. If it does not prove this it is inadmissible, for the clerk can only prove the records. He cannot certify to facts. Nor can the clerk bind the corporation by executing a contract, purporting to be by order of the directors. If any one has power to execute such a contract it must be the directors, and this power they cannot delegate. *Gillis* v. *Bailey*, 1 Foster 161.

Upon this view it is immaterial whether Cummings was or not competent to testify generally, as his testimony went only to the point of a waiver of a right claimed, which right the defendant's intestate never had. But if that testimony was material, still, under the railroad law of the State, making stockholders liable in certain cases for the debts of the corporation, Cummings had no such interest as to exclude him. The interest to exclude a witness must be a present, certain, and vested interest, and not one uncertain, remote and contingent ; 1 Greenl. Ev., sec. 390 ; and the judgment in this case would leave the liability of the witness the same as before.

Besides, it does not appear from the case that the stockholders are personally liable. They can be made liable only by proceedings in a specified mode. Comp. Stat., chap. 147, sec. 4. It is not certain that the necessary proceedings will be had, and if not, then Cummings is released from his contingent liability.

Upon the point that the subscribers are not liable for assessments until the capital stock is fixed, the case of *Railroad* v. *Chandler*, 13 Met. 311, cited by the counsel for the defendant, is a decisive authority, that where the amount of the assessments is limited to a certain sum upon each share, as in this case, and authority is expressly given by the charter to assess as soon as a specified number of shares are subscribed for, there is no necessity for limiting the amount of capital stock by any action of the corporation before proceeding to make and collect assessments upon the shares so subscribed. The other cases cited for the defendant upon this point are distinguishable from this in this essential feature. See note to *Railroad* v. *Chandler*, 1 Amer. Railway Cases 424. Where there is an express promise to pay

assessments, an action lies upon the promise, although the charter gives the right to sell the shares of delinquent subscribers. The remedy is cumulative. An. & Am. on Corp., chap. 15, sec. 16. In the note above referred to, numerous cases are cited in Pennsylvania, New-York, North-Carolina, Connecticut, Alabama, Kentucky and Virginia, to sustain this position. 9 Johns. 217 ; 2 N. H. 384 ; 14 N. H. 543. When the charter of a corporation imposes upon the company the duty of making stated returns of its income and expenditures, the government alone can take advantage of a non-compliance. A neglect in this particular cannot be set up by any individual as a defence to an action brought by the corporation. *Bridge* v. *Fisk & Norcross*, 3 Foster 178.

SAWYER, J. The verdict in this case was taken, by consent, for the plaintiffs, subject to the opinion of the court upon various exceptions to the rulings of the Court of Common Pleas on the several points in the case.

The first exception is to the competency of William H. Cummings as a witness for the plaintiffs, on the ground of his interest. If he had any interest it was solely on the ground that by the laws of this State he might be made personally liable for the debts of the corporation. The case finds that he was examined on the *voir dire*, and that he stated he had been a stockholder in the corporation until two or three weeks before he testified, and that the corporation was indebted by bond and otherwise to the amount of $220.000, but without stating whether any portion of this indebtedness arose or existed while the witness was a stockholder. It would seem to be a very probable inference that such was the fact. It may, nevertheless, be otherwise.

In *Chesley* v. *Pierce & als.*, 32 N. H. 388, it was held that a stockholder is not answerable, under the private liability laws of this State, for a corporate debt contracted before he became a stockholder ; and by the express provisions of the act of 1846, chap. 322, sec. 2, Comp. Stat. 315, he is not to be made liable for such as may be contracted after a sale of his shares, if he

shall have notified the town-clerk with whom it is the duty of the corporation to file a list of its stockholders, of the time of sale and the name of the person to whom sold. Upon the answers given by the witness, as stated in the case, he may be under no liability for the debts of the corporation upon either or both of these grounds. If excluded as a witness, it must be because the facts disclosed show his interest. The facts stated are not sufficient for that purpose, and consequently he was properly admitted.

If, however, he were shown to be interested by reason of his personal liability as a stockholder, that interest is not of such a nature as to exclude him from testifying for the corporation. The interest does not result from any direct liability for the debts of the corporation, nor is it fixed and made certain, or in any way increased or diminished by the result of this suit, whether favorable or unfavorable to the corporation. It is entirely contingent in its character, and it remains unaffected by the result, depending upon the same contingencies as fully after the determination of this suit, either way as before. The only possible way in which the witness can be affected by the issue is, that if it be favorable to the corporation, and they succeed in obtaining satisfaction of the judgment which they may recover, they will have a larger fund in possession out of which to pay those debts than if the result had been otherwise. This is the condition of every creditor testifying in a cause in favor of his debtor. Besides, if, upon the statement of the witness, that the stockholders were not individually liable upon the bonds, and that the directors voted that all other debts contracted by the corporation should be subject to the same condition, it is to be understood that the bonds contained a stipulation to the effect that the personal liability of the stockholders should not attach as to the bonds, and that the other debts of the corporation were contracted under a similar agreement on the part of the creditors, this would amount to an express waiver by the creditors of all claim to any remedy against the stockholders personally ; and we are not prepared to say that the personal liability could be

enforced in disregard of such waiver. It is enough, however, for the decision of the particular question in this case, that, upon the facts stated, the personal liability of Cummings is not made to appear, or, if made to appear, that it is of a contingent character, and too remote and uncertain to exclude him.

An objection was also taken to the admissibility of the records of the corporation, as evidence of the corporate votes and votes of the directors. The ground of the objection, as suggested in the argument, is, that the corporation cannot use their own records as evidence in their own favor to sustain this action against Eastman.

In 1 Greenl. Ev. 570, sec. 493, it is said the books of a private corporation are admissible as evidence of the election of their officers, and of other corporate acts there recorded, as between members of the corporation ; for as between them the books are of the nature of public books, and all the members of a corporation are chargeable with knowledge of the entries made on their books by their agent in the course of his business, and with the true meaning of those entries, as understood by him ; but the books cannot in general be adduced by the corporation in support of its own claims against a stranger. In An. and Am. on Corp. 607, the doctrine is thus laid down : " With respect to a mere stranger, unconnected in interest, such books are to be considered the books of a private individual, and no inspection can be compelled. Private entries in the books of a corporation which are under their own control, and to which none but the corporation have access, cannot be used to establish rights of the corporation against third parties." By both of these authors the doctrine is laid down that the corporate records are evidence against all persons, to prove their organization, and all acts necessary to be done in order to their corporate existence. An. & Am. on Corp. 573 ; Greenl. Ev., sec. 474. And by both also it is said that entries made in corporation books, of matters relative to any property or right claimed by them, cannot be evidence for them, and it would seem even as against their own members, unless made so by act of the legislature. An. & Am. 573 ; Greenl. Ev., sec. 493.

In some cases, then, the test to be applied to the question, whether the corporate records are admissible upon these authorities, would seem to be whether the party against whom they are offered stands in such relation to the corporation that he is chargeable with knowledge of the records; whether, as to him, the books are in the nature of public books — he being connected with them in interest, and of which he could demand and have inspection as of right, or whether he is a mere stranger, unconnected in interest; they being as to him private books, the inspection of which could not be compelled in his favor. In other cases, the test to be applied would seem to be one not having reference to the character of the party, but to the nature of the matter which is the subject of record. In this view the test is, whether the matter recorded consists of corporate acts, involving the organization or existence of the corporation, or whether it is merely matter pertaining to some contract, property, or right, not essentially involving the exercise of power under the corporate franchise. Whether any general rule upon the subject, and if so, what that rule may be, is to be deduced from an extended examination of the cases, we do not purpose to inquire. It is sufficient for this case that for the only material purpose for which the records were introduced, namely, to prove the assessments made upon the shares, we think there can be no doubt they were competent as against the intestate. He was one of the original grantees of the charter, one of the directors of the corporation, and claimed to be and exercised the rights of a stockholder from the time of his subscription, in virtue of the thirty shares here in question. The proceeding in ordering the assessments was a strictly corporate act, and one of a character such, if not to render it necessary, yet to make it in the highest degree proper that it should be entered on the corporate records. It was to operate upon all the shares and all the shareholders, and was in its nature essentially such as the acts and doings involving the organization of the corporation; material on the question of user or non-user, and necessary in order to preserve the existence of the corporation. It was

totally unlike an entry of any direct matter of contract, or one touching the title to property, not designed to have a general effect upon all the members of the corporation.   We think, in relation to such matter, the corporation records are evidence against one situated in relation to the corporation as was the intestate.

In *Turnpike Co.* v. *McKean*, 10 Johns. 154, the court say, " it is the general rule, and it is a rule of evidence essential to public convenience, that corporation books are evidence of the proceedings of the corporation ;" and that was a case between the corporation and one of its shareholders.

It would certainly be attended with great inconvenience, and would result in great mischief, if, when matters of this nature had been entered upon the records of the corporation by a clerk required to act under an official oath, and there were no circumstances of suspicion connected with the records, they were to be thrown aside in every suit in which the corporation was a party, and parol testimony substituted.

In *Edgerly* v. *Emerson*, 3 Foster 555, it is held that the unrecorded votes of a corporation may be proved by parol, but if entered of record, the record itself must be produced, or its absence accounted for, so as to lay the foundation for secondary evidence.

The paper signed by the clerk of the corporation, purporting to authorize the defendant's intestate, at any time within one year, to repudiate his subscription to the extent of twenty-five of the thirty shares subscribed for by him, was not competent evidence of an agreement binding on the corporation, without proof that it was executed by the authority of the directors.   By section five of the charter, the president and directors are authorized, by themselves or their agents, to exercise all the powers of the corporation for the purpose of constructing and completing their railroad.   The business of negotiating for subscriptions to the stock of the corporation, and thereby procuring the necessary funds for proceeding to construct and complete the road, falls within the powers thus expressly conferred upon the president

and directors. The clerk of the corporation, as such, has no power or authority in the matter. By virtue of his office he is not to be considered the agent of the directors for that purpose. To give the writing any validity, then, if there were no objections to it on other grounds, it would be necessary to prove that it was authorized by the directors, and that in executing it the clerk was acting as their agent, by their order. His testimony to the point, introduced by the defendant, and objected to by the plaintiffs, was, therefore, competent. The evidence shows an agreement in writing, made with the defendant's intestate, by the authorized agents of the corporation in its behalf, at the same time the subscription was made by the intestate for the thirty shares, and in reference to that subscription, and therefore binding on the corporation, unless invalid on other grounds. The two cotemporaneous writings upon the same subject, between the same parties, are to be considered together as one contract, unless upon other grounds the writing given by the corporation is to be held void. Thus considered in connection, effect would be given to all the stipulations on both sides, contained in both writings, as constituting together one agreement. If no person were to be affected by the contract but the parties themselves, it would be competent for them to agree that the intestate should take and pay for thirty shares, subject, however, to the condition, that if within one year he should elect to reduce the number so subscribed for to five, or any other number not less than five, he might be at liberty so to do, and that the corporation, upon his paying for the thirty or other reduced number of shares, would give him proper certificates therefor, constituting him the owner of them. It would be immaterial whether the whole contract appeared upon one paper, or whether one paper signed by him, promising to take and pay for thirty shares, was placed in the hands of directors as containing all the evidence necessary for them to hold to enforce their claim under the contract against him; and another paper signed by the directors, or by the clerk by their order, binding them to release him from his obligation to take and pay for so many of the shares as

he had the right to repudiate, were placed in his hands as containing all the terms of the contract necessary for him to prove, if he elected to reduce the number. In either case the agreement would be the same. But while the two writings are thus considered as parts of the same agreement, when they are of a character to affect only the parties to it, they may be regarded as separate and independent contracts whenever it is necessary so to regard them in order to protect innocent third persons, having an interest in the subject matter of the agreement, from the consequences of a fraud attempted to be practiced upon them by means of it. If necessary for that purpose, the writing by which the intestate promised to take and pay for the thirty shares, may be held as between the parties themselves to be their contract, binding in law, while the other part of the agreement, evidenced by the writing held by him, may be adjudged void, as a fraud upon third persons. Of this, neither of the parties to the fraudulent agreement would have any right to complain. If they, for the purpose of misleading and deceiving third persons, having an interest in the subject of their contract, held out the subscription of the intestate, as shown upon their subscription book, as the contract between them and him, and concealed from those third persons the fact, material for them to know, that there was a secret stipulation, making the contract an entirely different thing, the principles of common honesty would require that they should be compelled to stand to the agreement, as they held it out to be. This is to be done, not for the sake of either of the parties to the fraud, but of the innocent third persons who would be wronged by giving effect to the secret stipulation, and still more deeply wronged by holding the defendants wholly exonerated from the contract. The fraud in this case consists, not in the fact that the parties agreed that the intestate should have the right to repudiate his subscription to a certain extent, but in suppressing that material feature in the agreement, and in holding out to others as their contract one which speaks in very different terms from that which in fact they made. If the conditional character of the subscription had appeared upon the

subscription book itself, by inserting the provision that the intestate was at liberty thus to reduce his subscription, no person could have been deceived, and the contract would undoubtedly have been valid. The parties, for the purposes of deception, severed and disconnected the conditional stipulation from the contract, so as to render it on its face an absolute engagement by the intestate to pay for the thirty shares, and in this form held it out to others as their true contract. In this they acted fraudulently, and neither has reason to complain if the law holds the contract as between them to be what they held it out to be to others. This is not a case for the application of the maxim that both parties, being *in pari delicto* are to be left where they have placed themselves, neither being permitted to found a claim upon their fraudulent contract against the other. The contract here set up is that by which the intestate promised to pay for the thirty shares. That was not an illegal or fraudulent contract. The fraud consisted in presenting it to others as the true contract, and the whole contract on the subject, when another secret stipulation existed, which, if permitted to stand as binding, would give full effect to the fraud. It is the secret stipulation alone which operates in fraud of others, and upon *that* the law leaves the parties where they stand; declining to enforce it for the benefit of either; while, as to the other part of the contract, to enforce it between the parties is what is necessary to defeat their fraudulent purpose as to other innocent persons. That the proceeding is a fraud upon third persons is clear from the relation in which subscribers for stock in a corporation of this kind stand toward each other. In the subscription of each person, every other subscriber has a direct interest. Their respective subscriptions are contributions or advancements for a common object. The action of each in his subscription may be supposed to be influenced by that of the others, and every subscription to be based upon the ground that the others are what upon their face they purport to be.

The fact that one man has bound himself to place a certain amount of his money upon the risk involved in the enterprise, is

an inducement to others to venture in like manner. Seeing who are his associates, and the extent of the liability which they have assumed, he regulates his own upon that consideration ; and though in form and legal effect the contract of each is with the corporation, yet among the subscribers themselves it is to be regarded as an agreement with every other subscriber to bear that proportion of the common burthen to which he professes to bind himself by the contract which he holds out to them as his contract with the corporation. To hold that the secret stipulation is valid as between these parties, would be to give full effect to the fraud, by relieving the estate of the intestate from a part of that burthen which he held out to the other subscribers he had assumed, and throwing upon them the necessity of providing for it. To hold that by the fraud the whole contract as between the parties is void, would but increase the injustice as to the other subscribers, for it would throw upon them the whole of that proportion of the common burthen which the intestate held out to them he had assumed ; while, on the other hand, by holding that the contract which the parties held out to them as the true one was in fact the contract made by them — all secret stipulations rendering it other than that being void as fraudulent towards third persons—the contemplated fraud is defeated and perfect justice done to the other subscribers, and at the same time, in so holding, no wrong is done to the parties, of which either has reason to complain. The books abound with cases in which the principle is applied that a secret agreement between the parties to a contract, changing its character from what it ostensibly is, to the prejudice of others collaterally interested, is a fraud on them, and therefore void, even as between the parties themselves. *Jackson* v. *Duchaire*, 3 T. R. 551; *Wayburd* v. *Stanton*, 4 Esp. 179.

One class of cases of this character are those in which a private agreement is made between a creditor and his principal debtor in fraud of the surety. *Pidcock* v. *Bishop*, 3 Barn. & Cress. 605 ; *Stone & als.* v. *Compton*, 5 Bing. N. C. 142.

Another class of cases to which the same principles are ap-

plied are those in which an insolvent debtor secretly agrees with one of his creditors to pay a larger per cent., or to give further security, than is provided by the terms of a composition deed for the creditors generally. *Leicester* v. *Rose*, 4 East 372 ; *Cockshot & al.* v. *Bennett & al.*, 2 T. R. 763 ; *Jackson & al.* v. *Lomas*, 4 T. R. 166 ; *Wells* v. *Girling*, 1 Brod. & Bing. 447 ; *Knight* v. *Hunt*, 5 Bing. 432 ; *Lewis* v. *Jones*, 4 Barn. & Cress. 511 ; *Eaton* v. *Lincoln*, 13 Mass. 424 ; *Yeomans* v. *Chatterton*, 9 Johns. 294.

All such private agreements are held void on the ground that good faith to the other creditors requires that the equality for which it is to be understood on the face of the composition deed they bargained among themselves, shall be preserved, and the tacit understanding that all should share alike, be fairly carried out.

*Paige & al.* v. *Carter*, decided in Hillsborough County, December term, 1844, though not a suit brought to enforce such private agreement, involved the consideration of the principles applicable to this class of cases. In that case, Carter had made an assignment for the benefit of his creditors, to which the plaintiffs became parties. The assignment provided for a distribution of the assets among the creditors and a discharge of the debtor from further liability. Some of the other creditors, without the knowledge of the plaintiffs, had been induced to become parties to the assignment by securities given to them by Carter beyond the assignment itself. The plaintiffs, having received their dividend under the assignment, brought their action to recover the unpaid balance of their debt, claiming that the release contained in the assignment was void by reason of the fraud ; but the court held that the additional securities, being void on the ground that if valid they would operate as a fraud upon the other creditors, the same effect and operation were thereby given to the assignment and release as though the fraudulent securities had not been given.

The principles of that case are fully applicable here. In this as in that, the private agreement, modifying the contract which the parties held out to all others interested in it as the true contract

between them, is a nullity, and being such, the contemplated fraud is defeated, and full effect given to the contract as though the fraudulent agreement had not been made. The testimony, therefore, of the clerk, offered by the defendant and objected to by the plaintiffs, to show the object and purpose of the parties in the execution of the private agreement relative to the reduction of the number of shares subscribed for by the intestate, was competent to show the fraudulent character of the transaction as to third persons.

The fact that a large amount of debts has been allowed by the commissioner of insolvency against Eastman's estate, for which he became liable as the surety of the plaintiffs, is immaterial to the question raised by the case. Whatever amount may be paid by the administrator on account of those debts will be a personal claim of the administrator against the plaintiffs, to be adjusted in off-set to the dividend which they will be entitled to receive of him on account of the debt allowed them in this case, and placed upon the list of claims.

The evidence furnished by the records of the corporation of the several votes of the directors, extending the time for making the election to reduce the subscription, the proof of notice given by the administrator of his election, of the subscriptions by other persons subsequent to Eastman's, and of his declarations that he considered himself liable for the thirty shares, are not so material upon any point in the case as to require further consideration.

And the exception arises upon the evidence introduced by the defendant, that the corporation has never fixed and limited its capital stock, and that they have not given notice to the Governor of the assessments ordered, as required by the 3d clause of section 2 of the act of 1846, relating to corporations. Compiled Stat., chap. 147, sec. 1, ¶ 3. It is contended by the defendant that as the agreement of Eastman was in terms to take of the capital stock of the corporation the number of shares set against his name, this imports a certain proportion of a fixed and definite quantity, and that the corporation cannot proceed to

make and collect assessments until they have fixed and established the extent of that quantity, by defining and limiting their capital. The charter provides that the capital stock shall consist of not less than five hundred nor more than ten thousand shares; that upon five hundred shares being subscribed for the directors may proceed to make assessments thereon, and call in the same and commence building their road; and that the corporation may enlarge their capital from time to time, as needed in the progress of the work, by subscriptions for new shares; that no more than one hundred dollars shall be assessed on each share, and that all shares subscribed for shall be assessed equally. It thus appears that the legislature have in the first instance fixed and limited the capital at five hundred shares of one hundred dollars each, with power in the corporation to enlarge it from time to time as the exigencies of the corporation might require.

The five hundred shares having been subscribed for, the corporation were empowered at once to proceed and make and collect assessments upon them. In the provision that they may enlarge their capital from time to time by subscriptions for new shares, the legislature manifestly contemplated that the ultimate amount of the capital might remain undetermined, within the limit of the ten thousand shares, until after the assessment of the full amount authorized upon the five hundred shares. The corporation may have had no occasion to enlarge their capital. Whether they have or not is immaterial. The subscription of the intestate was made for thirty of the five hundred shares—the limit prescribed by the charter in the first instance, and subject to be enlarged at the pleasure of the corporation to the maximum limit. To hold that the corporation must have determined how far they would go in the end in the creation of stock, before they could assess upon the first five hundred shares, would defeat the object of the legislature in giving the power to assess on the first five hundred as soon as subscribed for, and to add to the capital as from time to time required; because, in order that all the shares should be equally assessed, it would be necessary to

create the whole number of shares at once which might ever be required, and assess upon all *pari passu ;* or, after assessing the first five hundred at one hundred dollars each, then to assess all others to the full amount of one hundred, though by so doing an amount of funds might be raised beyond the necessities of the corporation.

The amount of the capital is sufficiently defined and limited by the charter itself, to authorize the assessments upon the thirty shares subscribed for by the intestate ; and he would have no right to complain whatever additions might subsequently be made to the capital up to the designated limit, as that is the condition prescribed in the charter upon which all the subscriptions to the first five hundred shares were made.

That the notice prescribed by the statute has not been given to the Governor of the assessments ordered, may leave the stockholders personally liable for the debts of the corporation, but the neglect cannot exonerate the subscribers for stock from their contracts with the corporation to take the shares and pay the assessments, as ordered. The object of the enactment in the chapter referred to is to prescribe the particular cases in which the stockholders shall be thus personally holden for the debts of the corporation. By sec. 1 it is provided that corporations, having for their object a dividend of profits among their stockholders, shall be governed by the provisions and subject to the liabilities in the act contained, and the stockholders and officers thereof shall be personally liable for the debts and civil liabilities of the corporation in the following cases, and not otherwise. Then follow seven distinct clauses, each specifying a particular case in which this personal liability shall attach ; the third being the case of the failure of the corporation to give notice to the Governor annually of the amount of assessments voted and actually paid in, the amount of debts due to and from the corporation, and the value of their property and assets. There is nothing in the terms of the act, nor in its objects and purposes, to give to this provision the character of a condition precedent to the right of the corporation to enforce the collection of the assessments.

White Mts. Railroad *v.* Eastman.

Nor is there any ground for the objection which has been urged in the argument, that the corporation cannot resort to an action on the contract to enforce the collection, because the charter gives them authority to sell the shares of delinquent stock-holders. Where the act of incorporation gives no express remedy by suit, it is well settled that without an express agreement to pay, there is no other remedy than by a sale of the shares. But the remedy provided by the charter in authorizing the sale cannot be held to annul the contract of the parties. It has always been held to be cumulative. *Glass Co.* v. *Alexander,* 2 N. H. 380, and authorities there cited; *Littleton Co.* v. *Parker,* 14 N. H. 550. The cases, *George & al.* v. *Harris,* 4 N. H. 533, and *Society* v. *Perry,* 6 N. H. 164, are authorities decisive upon the point that the subscription containing an express promise to pay the assessments as ordered, is a contract founded upon a good consideration, capable of being enforced by suit at law upon it, like any other agreement in writing founded upon such consideration.

Upon all the points presented in the case, then, the plaintiffs are entitled to recover the assessments upon the thirty shares. The verdict which was taken for the sum of $2,820.42, as the amount due to the plaintiffs from the intestate, on the 28th of April, 1855, was properly taken for that sum, and judgment being rendered upon the verdict, that sum must be certified to the judge of probate as the amount of the plaintiffs' claim, to be allowed on the list of claims against the estate, with interest, to be computed thereon from that day.