By the Court, Robertson, Ch. J.
The interests of the two defendants in this case are so identical, the defendant Faulkner having no more rights than Beers, not being a bona fide purchaser without notice of the interest of the latter, that it may be discussed as if Beers were the actual purchaser, and the only defendant.
The propriety of the findings of fact contained in the decision of the court, and the case not being controverted, except as to the materiality of the fact misrepresented by Beers, the questions in this case are narrowed down to one of law, to wit: Whether the reliance, by a vendor of land, upon a representation made by a vendee or his agent, of the non-occurrence of a certain event, without any knowledge, on his part, whether it had taken place or not, after being informed by such vendor that he would, in case such event had not occurred, accept a far inferior price, would, in case such event had occurred, give such vendor a right to have any contract made in consequence of such misrepresentation, avoided, although the fact misrepresented did not directly affect the value or price of the land. That question may produce different results, according as the positive relief is asked for by the vendor to have the contract avoided, by the judgment of a court of equity, or specific performance is asked for by the vendee. Both might be refused in actions brought separately by both vendor and vendee, leaving the parties to seek relief elsewhere by actions for damages. As, therefore, in this case the court might have been warranted in refusing the *384 affirmative relief asked for in the complaint, of a rescission of the contract, although not in adjudging a specific performance of it, I shall consider the latter question first.
Whatever influence the existence of sufficient reasons to induce a vendee honestly to believe that a representation made by him, although false in fact, was. true, may have upon the legal effect which such untruth produces on a contract of .sale, where the fact misrepresented, to the knowledge of the vendee, formed the only inducement to the vendor to make the contract, without having any evi- ' dent bearing upon the value or price of the subject matter of sale, no such question is involved in this case, as fraud is clearly established by the want. of knowledge, by the defendant, of whether the fact had occurred or not. In this case the fraud of Beers is a necessary legal consequence of the facts found by the decision, as was conceded by the learned judge before whom the case was tried, in a part of the opinion delivered by him on deciding it, to be presently cited. The only question is, whether it is such a fraud as the law will take notice of, and relieve the deceived party from its consequences. The sole grounds urged in this case why the law should not notice it, were, that the fact stated was immaterial, because it was not an ingredient of the value, did not influence the price of the subject matter of the contract, or induce a sale thereof at a sum materially less than its real value. The learned judge, before whom the cause was tried, conceded that, “ as a matter of strict natural justice, such a contract should not be allowed to stand, as against the owner,” but held that “it was an established principle of courts of equity not to interfere upon trivial causes of complaint, which was the whole scope of the doctrine that the misrepresentation must be material.” He further held that the court should not interfere, if, upon view of all the facts and circumstances of the case, “ it appears that the fact (misrepresented) does not, or is not likely to, affect the value of the property to any material extent, or has not induced a sale thereof at a sum *385 materially less than its value.” I am compelled, however reluctantly, to dissent from both those propositions of my learned associate. Such a doctrine destroys all right of a vendor to fix his own criterion for the value of his property, and after'informing the vendee thereof, require the latter to disclose the truth, to the extent of his knowledge, in regard to facts material to or forming such criterion, and aids the vendee to profit by the betrayal of the confidence reposed in him by the vendor, unless the latter can satisfy a court or jury that such criterion was a just one.
The learned judge himself in this case laid it down as a general principal of law that any “ one owning real estate has a right to estimate what its value will become upon the happening of a certain event, and to set the price at which, on the happening of that event, he will hold his property. If another knowing that one has thus set a certain price, at which he holds his property upon a particular event happening, assert that the event has not happened, when in fact it has, and thus obtains the property at less than such certain sum, he must be deemed to have made the assertion either with full knowledge that the event has happened, and therefore with a deliberate intent to deceive, or to have made it without knowing how the fact really was, either from fear that the owner would decline to sell until he had made inquiries, which might result in ascertaining that the event had happened and a refusal to sell, except at the estimated value, or from a willingness, with a view' to obtain some expected benefit by closing the contract at once, to take the chance of the facts turning out to be as represented, and in case it does not,- to abide by the consequences of the misrepresentation. In either aspect, the owner has been beguiled into parting with his property at a less sum than that which, under the circumstances as actually existing, he asked for it, as the purchasing party well knew. As a matter of strict natural justice, such a contract should not be allowed to stand as against the owner.” And I tbinlr it will be found on investigation that the principles of law *386 as administered by courts .of equity do not deviate from those of “ natural justice " in such cases. Neither the principle involved in the maxim “ de minimis non curat lex ” nor the rule of the civil law, “ lies bona fide vendita, propter minimam causam inempta fieri non debet” (Dig. lib! 18, tit. 1, l. 54. 1 Domat, B. 1, tit 2, § 11, art. 3,) are applicable in such a case. Equity does not embarrass itself with computing the amount of damages, when called upon to undo a fraud. (Bennett v. Smith, 16 Jur. 421. S. C. 10 Eng. Law and Eq. 272.) If the truth of the fact stated had been made expressly a condition of the performance instead of the execution of the contract, however trivial it might have been, and however imperceptibly connected with either the value or the price of the subject matter of the contract, every court would be bound to notice it. Why should not fraud in what constituted the inducement to the contract be as fatal as a breach of a condition in it ?
' But in fact the necessity of the connection of a fact falsely represented with the value or price of property, whose sale is procured by such fraud in order to make the contract void, rests solely upon the general presumption of law that such value or price forms the inducement to the sale. But that circumstance does not debar parties from agreeing that other considerations shall form the inducement, or rather from estopping themselves from denying that they formed it. The authorities also do not confine the materiality of the fact misrepresented to' its influence upon the value or price. Justice Story, in his Equity Jurisprudence, (vol. 1, § 195,) requires in -general terms the misrepresentation to be simply “something material, (i. el) constituting the inducement or motive to the act or omission of the other party by which he is misled to his injury." In a subsequent part (Id. § 210) of the same work, he defines what he includes under the head of inducement or motive, by dividing material circumstances into those which are “intrinsic” and form the very ingredients of the contract ; such as natural or artificial defects in the subject mat *387 ter “ of the contract which belong to the nature, condition, title, safety use or enjoyment ” of it, and “ extrinsic,” which form no part of it but “ are accidentally connected with it, or rather bear upon it at the time of the contract.” Which latter are again subdivided by him into those which enhance or diminish its value or price, and “ those which may ereate inducements or operate as a motive to make or decline the contract;” and he gives as instances of the last “the occurrence of peace or war, the rise and fall of markets, the character of the neighborhood, increase or diminution of duties and the like.” Sir John Romilly, M. R. concedes that “ if on the purchase there is an express statement of fact on either side, which causes the contract to be made, and on the faith of which alone the contract is made, and that fact is * false * * it might render void the whole transaction.” (Dolmar v. Nokes, 22 Beav. 402, 407.) The “ injury ” to the party deceived, of which the learned author just cited (Judge Story) speaks, of course does not mean pecuniary loss, since no such qualification exists in the authority cited by him. (Phillips v. Duke of Bucks, 1 Vern. 227. S. C., Eq. Cas. Abr. 18, pl. 10.) In that case the plaintiff had procured from the defendant a contract for the sale of a manor under the false pretense that he bought it for persons whom the defendant declared his willingness to oblige. The opinion of the Lord Keeper, (Guilford,) who refused specific performance, puts his decision solely upon the ground of the misinformation, although' as he said, the party for whom the contract was professed to be made, might have sold the property next day to the plaintiff. In a note to that case (id.) another one (Harding v. Cox,) similar in character to that in the text was decided by Lord Hardwicke, who declared that if the defendants had been able to prove the fraud he would have dismissed the bill on the strength of the case contained in the text. Similar language was held in the similar case of Fellows v. Lord Goodyr, (1 Sim. 63; S. C. on appeal, 1 Russ. § M. 83,) although differently decided, because the vendor had no *388 reason to know on what the vendee relied, a decree was refused dismissing the bill because there was no proof that the vendor knew that the vendee relied on a different ownership from his. It is true that in all these cases the fraud was unproved, but the learned judges, by whom they were decided, unhesitatingly recognized the doctrine as settled law. But a court of* equity has gone so far as to refuse specific performance of a contract, because the party seeking it refused to perform an entirely independent contract, which he had entered into, to induce ihe party against whom he was proceeding, to enter into the contract sought to be enforced. (Myers v. Watson, 1 Sim. N. S 523.)
•I think, therefore, we should adhere to the general principle already referred to, so admirably, ‘laid down and Sustained by the reasoning of my learned associate, but reject his qualification of it as not being sustained by reason or authority,-and hold that the fraud perpétrated by Beers in regard to what the plaintiffs declared to be their inducement in making the contract they did, sufficient to have warranted the refusal of a specific performance of the contract in question.
But it still remains to be determined whether such fraud is a good ground for rescinding the contract. Of 'course it would be if it is a good defense to an action at common law, because the contract, being recorded, is a cloud upon the title to the property. It will be well, therefore, to examine a few cases in which such doctrine has prevailed. In Sibbald v. Hill, (2 Dow’s Parl. 263,) which was the case of a contract of insurance procured by the assured from the underwriter by a fraudulent representation that another underwriter had previously insured the same risk at a less price, Lord JEldon;in delivering his opinion, held that “if a person meaning to effect insurance, exhibited a policy underwritten by a person of skill and judgment, knowing that this would weigh with the other party and disarm the ordinary prudence exercised in the common transactions of life, and it turned out that this person had not in fact *389 underwritten the policy, or had done so under such terms, that he came under no obligations to pay, it appeared to him to be settled law that this would vitiate the policy.” The learned judge, (Grover, J.) who delivered the opinion in the Court of Appeals of this state, in the'case of Valton v. National Fund Life Insurance Co. (20 N. Y. Rep. 37,) in commenting therein upon the case last referred to, says: “ The court in this country would say that this was a fraud, not on the ground that the misrepresentation affected the nature of the risk, but because it induced a confidence without which ' the party would not have acted.” In the case last cited, which was an action on a policy of life insurance, there was evidence that the agent of the defendants during the negotiations for the insurance, stated that he would not take so large a risk on the life insured if he was only the porter of the' assured; and the latter represented that he was his partner and the moneyed man of the firm. On «the trial the counsel for the defendants requested the court, in substance, to charge the jury, that if such representation was made, and was untrue and “ if the defendants would not have issued the policy if the representations had not been made, "the policy was void.” "Which the judge declined, but charged the jury that if the assured untruly represented that the person, whose life was insured was a partner, or the moneyed man of his firm, and “ either or both of such representations were material to the risk,” the policy was avoided. The same learned judge, (Gfrover, J.) after stating Lord Eldon’s views, in the case before cited, (Sibbald v. Hill, ubi supra,) proceeds ' to say, “ The principle of this case when applied to the one under consideration, shows that the judge committed an error in refusing to charge as requested ” that it was “ clear that the circumstance of a party being engaged in commercial business, possessed of large means, might induce an insurer to make an insurance upon his life for a large amount, while where he was a mere porter, the risk would be rejected, although the chance of life would be as good in the latter situation, as the former.” These cases fully estab *390 lish the principle, that the materiality of a representation whose falsehood affects a contract, does not depend upon its effect on the value or price, but its supposed influence upon the mind of the contracting party in entering into the contract. The ordinary case of a sale at auction rendered void by puffing, illustrates the same principle; the fictitious bids amount to representations that the bidders are willing to pay the price they offer. Such a statement does not relate to any thing affecting the actual value, yet the sale becomes void, because the purchaser is presumed to have been misled into making the contract he did. (Veazie v. Williams, 8 How. U. S. 153.) The following cases are also instances of a contract vitiated by a fraud as to a matter not affecting the value. In Hill v. Gray, (1 Stark. 435,) a mere failure by the seller to undeceive a buyer as to the prior ownership of the article bought, his reliance upon which, such seller had reason to believe, formed his inducement to the purchase, was held to vitiate the sale. In Culver v. Webb, (12 Conn. Rep. 443,) where a purchase had been made of one half of a patent right, to induce a third person to buy the other half, a secret agreement between the first buyer and seller to cancel such purchase was held to be fraudulent and void. In White Mountain Road v. Eastman, (34 N. H. Rep. 141,) a secret agreement between the directors of a corporation and a subscriber, to allow him to reduce his public subscription to its stock was held void, upon the ground that it formed an inducement for others to buy. Suppose that the vendor of half the patent in the first of the last two cases cited, (Culver v. Webb, ubi supra,) knowing that the person with whom he was negotiating to sell one half of his patent, would be induced to buy it, if the person to whom he had previously nominally sold the other half retained such purchase, should represent that there was no agreement to cancel it; or that the directors of the company, in the other case, (White Mountain Road v. Eastman, ubi supra,) informed every one desirous of subscribing to the stock of such company, that no previous *391 subscriber was released from, taking the full amount of shares of stock which he had apparently agreed to subscribe; can it be doubted that the purchase of half the patent in the first case, or any subscription to stock in the second, would be rendered fraudulent and void, although the facts misrepresented did not affect their value ?
The learned judge in this case says: “ There is nothing in this case giving to the sale of Ludlam’s lots, any greater effect than can be ascribed to the mere transfer of the title from one to another,” and argues that “it is impossible to perceive how the mere fact ” of such transfer “ can in any way affect the value of a neigboring piece. Such is clearly not a necessary nor even an ordinary result of a mere change of ownership.” It is very true that such a change has no effect upon what are termed by Judge Story the intrinsic circumstances affecting the value of the land, but it is not difficult to perceive how it may have a great effect upon extrinsic circumstances affecting its price. The purchase of lots in a growing city in a particular locality by an enterprising capitalist, known to be in the habit of making improvements, will raise the price of property in the neighborhood; so the possession of a piece of property by an owner notoriously indisposed either to improve or sell property owned by him, will keep down the price in the same vicinity. It is true there may have been but slight evidence, in this case beyond the declaration of the plaintiffs at the time, upon which to base a presumption that Mr. Ludlam’s retaining his lots could have any legitimate effect upon the price they might expect to obtain for theirs; but in neither of the last two cases cited, (Sibbald v. Hill, Valton v. National Fund Life Assurance Co.) was there any evidence, beyond the declaration of the parties, as to the influence of the facts misrepresented upon the minds of the contracting parties. Each of the learned judges, who delivered the opinions therein, argued from his own knowledge and experience as to the probable effect of such facts upon any one about to enter into such contracts. In this case we have not only the *392 declaration of the plaintiffs as to their inducement to take the less price and the immediate misrepresentation made to induce them to take it, thus estopping the defendants from denying that it was the inducement, but the finding of it as a fact, in the decision at special term. It is true, we have but slight evidence of the habits or disposition of Mr. Ludlam in regard to his property, but, it is proved that one of the plaintiffs told the defendant Beers, at the time of the negotiation, that “she didn’t wish- to sell until the improvements had commenced,’’ and that “ if Mr. Ludlam’s lots are sold, the price of ours is $30,000, for then the improvements have commenced." This was full notice how the plaintiffs considered the' sale of Mr. Ludlam’s lots to affect the price of theirs, and however absurd or illogical it may have been (if it were so,) the defendants had- no right to take advantage of the delusion by falsehood and fraud. But under such circumstances the possibility of a connection between the sale of Mr. Ludlam’s lots and an increase of price for those of the plaintiffs is all that is necessary; the plaintiffs having established their test of value,, which was recognized by the defendants, no court has a right to prescribe a different one. It would be very difficult for any court, however experienced in all the causes which affect the price of real estate, to prescribe the limits for them.
If there be any inquiry to establish that the plaintiffs lost any money by the bargain they made, it appears to me the evidence tends to establish that they did; for-the question was not merely whether they lost the $30,000 they asked, but whether they could have got more than the $22,000, since if the defendants had refused to give it, they would have had their lots still. It is true offers do not prove value, but they prove a demand and a possibility of loss. The quick succession of those offers, and the sales of other lots in the neighborhood at higher rates, immediately after the sale by Mr. Ludlam, leave room for the inference, at least, that it had something to do with such rise, and it is only by inference that it can be established; for the evidence of the *393 purchasers of other property that they gave the price they did for that reason, would be inadmissible as not tending to establish the fact of the connection, per se.
The judgment should, therefore, for the reasons just mentioned, be reversed, and a new trial had, with costs to abide the event.