PARK, CARPENTER, FOSTER AND SEYMOUR, JS.

WILLIAM W. HUNTINGTON AND ANOTHER *vs.* ADDISON
L. CLARK.

*C*, an insolvent debtor, made a compromise with his creditors for twenty-five
cents on a dollar. *H*, a creditor, signed the composition deed, putting down
his claim at $25,000, when it was in fact $45,000. There was no evidence of
an actual fraudulent intent on *H's* part, but there was a fraud on the part of
*C* upon all the creditors in making a false representation as to his liabilities
and assets. In a suit by *H* against *C* to recover the balance of his whole
claim above the twenty-five per cent. received, it was held—

1. That *C's* fraud vitiated the release against all the creditors.

2. That supposing *H* to have had a fraudulent intent in representing his claim
as less than it was, yet this was a fraud on the other creditors and not on the
debtor, and while it would have destroyed *H's* right to avail himself of the
benefit of the compromise agreement, it would yet not preclude him from
setting up the debtor's fraud as vitiating the compromise so far as the debtor
was seeking the benefit of it.

3. That in the absence of evidence on the subject the court would not as matter
of law regard *H's* conduct as fraudulent.

GENERAL ASSUMPSIT, for money paid and on an account
stated; brought to the Superior Court in Hartford County,
and tried to the jury, on the general issue, with notice of a
discharge by a composition deed, before *Pardee, J.*

Upon the trial it was admitted that the defendant, who

was a manufacturer, on the 27th of March, 1868, was indebted to the plaintiffs, who were commission merchants, and his principal creditors, in about the sum of $45,000, and that both parties were residents óf the state of New York. Also that the defendant was at that time unable to pay his debts in.full, and that the following composition deed was on that day executed by the plaintiffs, and other creditors of the defendant:

" To all to whom these presents shall come: We, whose names are hereunto written and seals affixed, creditors of Addison L. Clark of Philmont, in the state of New York, send greeting. Whereas, the said Addison L. Clark is justly. indebted unto us, severally, in divers sums of money, and by reason of losses is unable to pay our several claims in full, and we, the said creditors, having agreed to accept twenty-five per cent. of the amount opposite our names, as aforesaid, in full satisfaction and discharge of our several debts: Now know ye that we, the said several creditors, do compound and agree with the said Addison L. Clark by these presents, that we will accept for every dollar set opposite our names, as above mentioned, the said sum of twenty-five cents on the dollar, in full discharge and satisfaction of the said several amounts due us, to be paid within the space of sixty days next after the date hereof; and we do further severally agree that in the event of the payment of the sum aforesaid, within the time aforesaid, we will not at any time hereafter sue, molest, or trouble the said Addison L. Clark for any debt, demand, or claim, now due and owing to us, or any of us, as stated in this covenant; and all the covenants herein contained shall extend to and bind the heirs, executors and administrators of each of us respectively. In witness whereof we the said creditors have hereunto set our hands and seals this twenty-seventh day of March, 1868.

(Signed), W. W. Huntington & Co., [Seal.] $25,000."
(And other creditors.)

The defendant claimed, and offered evidence to prove, that he exhibited to the plaintiffs a true statement of his debts and assets, and that the plaintiffs agreed to call their debt.

$25,000, and to discharge him upon receiving 25 per cent. of that sum, and that he supposed that the composition deed was so drawn as to carry out the agreement; also that the statement of his liabilities, containing the claim of the plaintiffs at that sum, was exhibited to all the other creditors with the plaintiffs' knowledge and assent; that the plaintiffs intentionally concealed from the other creditors the fact that their claim exceeded $25,000, and induced them to believe that they were discharging all their claim by the composition deed; that all the defendant's creditors, induced by this conduct of the plaintiffs, either signed the agreement affixing to their names the amount of their entire claims, or agreed to discharge him from all their claims upon receiving twenty-five per cent. of such claims, and did in fact discharge him; that he tendered to the plaintiffs, within sixty days from the 27th of March, 1868, $6,250, which the plaintiffs refused to accept unless he would also give his notes for the $20,000, which they claimed was not to be discharged by the composition deed; and that he refused to give the notes, claiming that such was not the agreement, and that he was under no obligation to pay the $20,000.

The plaintiffs offered evidence denying all these claims of the defendant, and claimed to have proved that the agreement between them and the defendant was that they should compromise only $25,000 of their debt, leaving the remainder undischarged; that the compromise agreement was drawn to carry out this arrangement; and that the defendant was requested by them to inform his other creditors that the sum so signed by them did not comprise his whole indebtedness to them, and that the balance was undischarged, which the defendant promised to do, and they supposed he had done; that the plaintiffs did not conceal their claim or deceive the other creditors in relation thereto; and that the defendant never tendered or offered to pay anything under the composition deed.

And the plaintiffs further offered evidence to prove that, before the execution of the composition deed, the defendant exhibited to the plaintiffs a statement of his assets and lia-

bilities, upon the faith of which they executed the deed, but that he had at the time fraudulently concealed a large amount of money and other personal property from the knowledge of the plaintiffs and his other creditors, which he did not exhibit in his statement, and that the plaintiffs executed the deed without any knowledge of the property so concealed, and would not have executed the same if they had known the true state of the defendant's assets and liabilities; that among the defendant's liabilities which were exhibited by him and which amounted to about $20,000, besides the debt due to the plaintiffs, was the name of one person whose debt was represented as $1,000, and who signed the composition deed for that sum, and that this person was not a creditor.

The defendant offered evidence to show that all his estate was truthfully represented in the statement, and was fully disclosed, and that his statement of liabilities was honest and correct.

He further claimed, and offered evidence to prove, that subsequently, and after payment of the composition to all the other creditors, on the 28th day of November, 1868, the plaintiffs offered to take twenty-five per cent. of their full claim, and that upon their claim that they had not agreed to discharge the $20,000, and that their whole claim was due, he agreed to pay the sum of twenty-five per cent. on their full claim, to be paid in three installments in cash, amounting to $8,600, between that day and the 29th of December, 1868, and the balance by two indorsed notes, payable in six months and one year from January 1st, 1869; that the first three payments were made according to the agreement; that when the notes were to be given a dispute arose as to the validity of one item of $1,664 of the plaintiffs' account; that in June, 1869, the plaintiffs offered to take $3,500 in full for their remaining claim, which sum was about $90 less than the balance of the twenty-five per cent. of their full claim, including the disputed item of $1,664; that this offer of the plaintiffs' was agreed to by the defendant on the 14th day of July, 1869, and the $3,500 paid by him on that day, and the

following receipt in full given to him by the plaintiffs: "Received, New York, July 14, 1869, of Mr. A. L. Clark, thirty-five hundred dollars, which is in full settlement of all claims against him.     W. W. Huntington & Co., in liquidation."

The plaintiffs claimed, and offered evidence to prove, that after the expiration of the sixty days from the date of the composition, no payment having been made thereon, both parties regarded the whole debt as still due and undischarged; that during the negotiations prior to November 27th, 1868, the defendant, for the purpose of inducing the plaintiffs to compromise their claim, made false representations as to the amount of his property and assets; that he then had a large amount of money and personal property concealed from the knowledge of the plaintiffs, which he did not disclose; that they, believing the representations to be true, and relying on their truth, did, on the 28th of November, 1868, agree to accept twenty-five per cent. on their full claim, to be paid as claimed by the defendant; that the defendant made the first three payments as agreed, but that, when the two notes were to be given, there was not any dispute about the item of $1,664, and that the defendant refused to give the notes solely on the ground that he was poor and unable to pay that amount, though he then had a large amount of property which he fraudulently concealed; that, induced by the false representations of the defendant, they did, on the 14th of July, 1869, accept the sum of $3,500, and give the receipt of that date; and the plaintiffs claimed that both the agreement of November 28th, 1868, and of July 14th, 1869, were obtained by the fraud of the defendant, and that the receipt was without consideration. All this the defendant denied.

The plaintiffs in writing requested the court to charge the jury among other things as follows:

1.    That if the jury should find that, when the composition agreement was signed by the plaintiffs, the defendant furnished a statement and made representations of his affairs which were the basis of the agreement, he was answerable

for the truth of the representations, and that good faith required that he should not intentionally have withheld any material fact as to the condition of his estate; and that if the plaintiffs compounded with the defendant under a false impression under which the defendant knowingly left them as to the amount of his estate, they might avoid the agreement and recover for the balance of their claim..

2. That the construction of the compromise agreement depended on extrinsic circumstances, and that that question and the question of good faith of the plaintiffs were questions of fact for the jury, and that if the creditors who signed the composition deed knew that the plaintiffs intended to sign for only a part of their claim, or if their want of knowledge was due to the neglect of the defendant to inform them as agreed by him, then the defendant could not now profit by that neglect, and that the plaintiffs under those circumstances could recover.

3. That if the jury should find that the defendant did not perform the condition of the composition deed on his part, or waived his rights under it, and the parties subsequently treated the account as an open and outstanding claim, the plaintiffs could recover the amount of their claim, unless the defendant could show a full payment or legal discharge of the claim since that time.

The court charged the jury in writing as follows:

"If the jury find that the plaintiffs intentionally concealed from the other creditors the fact of an indebtedness over $25,000, or induced other creditors to join in the composition deed by representing that the amount affixed to their name in the deed represented their entire claim, they can in no case recover any of the balance; and any contract or undertaking by the defendant relative to paying the balance would be utterly void; and it would be immaterial what representations were made by the defendant to induce the plaintiffs to enter into the composition deed and thus conduct themselves toward the other creditors; and their verdict must be for the defendant, provided he made legal tender of the sum to be paid by him within the sixty days prescribed in the deed.

" If the jury find that the plaintiffs intentionally induced the other creditors to believe when they signed the composition deed, that the plaintiffs' claim was only $25,000, when in fact it was over $40,000, and thereby intentionally induced them to sign the same, such conduct is in law a fraud; and if the defendant either paid or legally tendered to the plaintiffs the percentage upon the $25,000 in accordance with the requirements of the composition deed, the plaintiffs can recover nothing more.

" If the jury find that the plaintiffs fraudulently concealed from the knowledge of the other creditors a part of the indebtedness of the defendant to them, thereby intentionally inducing them to sign the composition deed, they cannot set up the fraud of the defendant to relieve themselves of the bar of the composition deed, provided the defendant either paid or legally tendered to them the percentage upon the $25,000, in accordance with the requirements of the composition deed.

" If the jury find that when the plaintiffs executed and delivered the composition deed to the defendant, they had no intention to deceive the other creditors or permit them to be deceived, and that the defendant agreed to notify the other creditors, before they should sign the deed, that the surplus remained as a debt against him, and neglected so to do, and their want of knowledge thereof was due to such neglect, the defendant cannot now profit thereby and the plaintiffs can recover.

" The plaintiffs say that in fact their claim at the time of the execution of the composition deed was over $40,000, and that they agreed to make seventy-five per cent. discount only on $25,000, leaving the defendant to pay the surplus in full. If this agreement was made, and was known to the other creditors when they signed the deed, then the agreement is good in law, and the plaintiffs can recover the balance of their claim. And if the defendant fraudulently misrepresented his estate to the plaintiffs, or knowingly left them to believe it to be smaller than it really was, and thereby induced them to discount from their claim under the like state of things, they can recover the amount thus discounted.

" A debtor who would avail himself of a composition deed must perform, or make legal tender and performance of, all the obligations which that deed imposes upon him ; otherwise it affords him no protection against the payment of the full amount of his debt.

" It was the duty of the defendant to comply with the conditions in the compromise agreement, and if he did not the agreement is not binding on the plaintiffs, unless there has been a lawful tender on his part. A tender to have been effectual should have been unconditional and unqualified, and was not sufficient if there was any express or implied demand on his part that the money should have been received in full ; and the defendant should have been ready and able to pay the money and have made that fact known to the. plaintiffs ; and if the defendant made a lawful tender, still the benefit of that tender was lost if the jury shall find a subsequent demand or refusal on the part of the defendant, and a qualified refusal would be sufficient to vitiate the tender. But the actual production of money is waived by an intentional and unequivocal expression by the creditor by words or conduct of his intention not to receive it. If the plaintiffs accepted after the day the money tendered, knowing it to be. offered as a payment on the compromise, and agreeing to accept it as such and waive their rights growing out of the non-payment, the defendant is entitled to the benefit of such acceptance and agreement.

" The payment of a less sum of money than is actually due cannot be a satisfaction and will not operate to extinguish the whole debt ; and a receipt expressed to be in full, given on such payment, may be enquired into.

" Where there is a disputed claim between two parties and for the purpose of settlement of such dispute one offers to pay. and the other receive a certain sum less than that claimed to be due by way of compromise, there being no fraud or mistake, no further claim can be made.

" The party setting up fraud in the procurement or a contract for the avoidance of the same, must prove the existence or such fraud by a preponderance or evidence, and that the

fraudulent misrepresentation was one of the inducements to enter into the contract, and that without that inducement the contract would not have been made. This rule you will apply alike to the execution of the composition deed and the receipt of July 14th, 1869."

The jury returned a verdict for the defendant, and the plaintiffs moved for a new trial for errors in the instructions to the jury.

*Hyde* and *Calhoun,* in support of the motion.

1. The defendant claimed that the plaintiffs agreed to call their claim $25,000, and to discharge him on receiving twenty-five per cent. of that sum, that with the plaintiffs' knowledge the other creditors were informed that this was the amount of their claim, and that the fact that they might have presented a larger claim was concealed from the other creditors. If this were so, and there was nothing else affecting the validity of the composition deed, the plaintiffs were certainly bound by their written contract. Their claim would have been fixed at $25,000, and they estopped from demanding more. But it worked no wrong or injustice to the defendant, or to the other creditors, that the plaintiffs had forgiven the defendant $20,000 of their claim against him. And the knowledge of this fact was of no consequence to the other creditors so long as they were correctly informed of the amount of the plaintiffs' actual claim under the composition. On the defendant's own showing then, the transaction was free from any taint of fraud or unfairness on the part of the plaintiffs, either in intent or act. *Clarke* v. *White,* 12 Pet., 178. But the plaintiffs claimed that the agreement was that they should compound only $25,000 of their debt, leaving the remainder undischarged, and that the defendant agreed to inform his other creditors of this arrangement. In this aspect, also, the plaintiffs' conduct was equally free from fraud or unfairness; and upon this part of the case, the single question before the jury was which agreement was actually made.

2. But the plaintiffs claimed further, that whatever the contract really was it was void, because they were induced to enter into it by the fraudulent representations of the defendant as to his assets and liabilities. The court clearly erred, not only in refusing to charge as requested on this point, but in the charge which was given, and which must be construed with reference to the claims of the parties. By the rule of law laid down in the first part of the charge by the judge, if the plaintiffs made an agreement to call their claim $25,000, and to give up the balance, and intentionally concealed this fact from the other creditors, they are bound by this agreement although drawn into it by the grossest fraud of the defendant. It cannot be denied that if the plaintiffs had agreed to accept twenty-five per cent. of their whole claim of $45,000, they could have avoided their contract through the defendant's fraud. *Vine* v. *Mitchell*, 1 Mood. & Rob., 337; *Irving* v. *Humphrey*, 1 Hopk. Ch., 284; *Jackson* v. *Hodges*, 24 Maryl., 468; *Seving* v. *Gale*, 28 Ind., 486; Chitty on Cont., 10 Am. ed., 756. It is hard to discover why they cannot claim the same right although they agreed to take less than their whole claim. The concealment of this fact from the other creditors was no injury to them, for if the defendant had been honest the plaintiffs' whole debt would have been discharged. His fraud avoids the deed as to the other creditors and leaves them *in statu quo*.

3. The court also erred in charging the jury that if they "should find that the plaintiffs *fraudulently* concealed from the knowledge of the other creditors a part of the indebtedness of the defendant to them, thereby intentionally inducing them to sign the composition deed, they could not set up the fraud of the defendant to relieve themselves from the bar of the composition deed." But neither party claims any *fraudulent* concealment. To make the concealment a fraud upon the remaining creditors it must have been a breach of legal or equitable duty, or of trust or confidence justly reposed, by which an undue and unconscientious advantage was taken of them. 1 Story Eq. Jur., § 187. But even if the concealment was of this fraudulent nature the court erred in this

part of the charge. It is true that one creditor, a party to a composition, cannot secretly stipulate for any advantage over the other creditors. And the reason why a debtor is allowed to set up such a fraud in which he has participated is sometimes said to be from public policy, and sometimes because the debtor is supposed to act under a moral duress. But the fraud here claimed by the plaintiffs to have been committed by the defendant was not in the contract or growing out of it, but in the false representations which preceded and induced the making of the contract. *Mallalieu* v. *Hodgson*, 16 Adol. & El., N. S., 690; *Elfelt* v. *Snow*, 6 Bank. Reg., 57. The plea of moral duress cannot be made in behalf of the defendant. Nor are the plaintiffs seeking any undue advantage over the other creditors, but to avoid the whole composition and leave all the creditors on the same footing.

4. The court also erred in charging that "where there is a disputed claim between two parties and for the purpose of settlement one offers to pay and the other to receive a certain sum less than that claimed to be due by way of compromise, there being no fraud or mistake, no further claim can be made." This charge must be construed in view of the respective claims of the parties. In November, 1868, the defendant agreed to pay the plaintiffs twenty-five per cent. on their full claim of $48,000. Afterwards he declined to make the final payment because of a disputed item of $1,664. The actual payments made were about $12,000, and the plaintiffs claimed that the receipt in full was without consideration. *Ryan* v. *Ward*, 48 N. York, 204; *Warren* v. *Skinner*, 20 Conn., 559; *Harriman* v. *Harriman*, 12 Gray, 341; *Bagley* v. *Day*, 26 Maine, 88. The charge, therefore, amounts to this :—A payment of $12,000 would not extinguish a debt of $46,000; but if there was a dispute whether the claim was $46,000 or $48,000, it could be settled in full for $12,000. *O'Bierne* v. *Lloyd*, 43 N. York, 249.

*N. Shipman* and *Robinson*, contra.

1. A composition deed is a contract between three parties :

*first*, the insolvent; *second*, the individual creditors; *third*, the creditors as a body. In considering questions of fraudulent dealing on the part of an insolvent and a single creditor, the rights of the remaining body of creditors and the rules of public policy are paramount. Fraud of one creditor upon co-creditors in a composition deed may consist either in concealment or in inducement, and the courts make no distinction in the legal effect. *Knight* v. *Hunt*, 5 Bing., 432; *Howden* v. *Haigh*, 11 Adol. & El., 1033; *Frost* v. *Gage*, 6 Allen, 50; *Higgins* v. *Pitt*, 4 Exch., 312; *Britten* v. *Hughes*, 5 Bing., 460; *Doughty* v. *Savage*, 28 Conn., 146. The intention to deceive which is proved in the fact of *concealment* is the fact for which courts enquire. In the case at bar the jury, under the charge of the court, must be regarded as having found that the plaintiff " fraudulently concealed from the knowledge of the other creditors a part of the indebtedness of the defendant to them, thereby intentionally inducing them to sign the composition deed." The exigencies of the case do not require us to go to the full length of the decisions as to the nature of the fraud. The fact of understanding the amount of a creditor's debt in a composition deed and concealing it from his co-creditors, so that the residue might be claimed from the debtor, is such a fraud upon co-creditors as to extinguish all his former rights. *Britten* v. *Hughes*, 5 Bing., 460; *Higgins* v. *Pitt*, 4 Exch., 312; *Holmer* v. *Viner*, 1 Esp., 132.

2. A fraud like the plaintiffs' has been held to avoid the composition deed, and to entitle the debtor to recover back the money paid on the fraudulent contract, and this regardless of the fact that other creditors have been injured by the fraud. *Doughty* v. *Savage*, 28 Conn., 146; *Frost* v. *Gage*, 3 Allen, 560; *Howden* v. *Haigh*, 11 Adol. & El., 1033; *Breck* v. *Cole*, 4 Sandf. Sup. Ct., 79; *Wood* v. *Roberts*, 2 Stark., 417; *Cecil* v. *Plaistow*, 1 Anst., 202; *Fawcett* v. *Gee*, 3 id., 910; *Jackman* v. *Mitchell*, 13 Ves. Jr., 581; *Smith* v. *Cuff*, 6 Maule & Selw., 160; *Horton* v. *Riley*, 11 Mees. & Wels., 492; *Cockshott* v. *Bennet*, 2 T. R., 763; *Ramsdell* v. *Edgarton*, 8 Met., 230; *Leicester* v. *Rose*, 4 East, 372; *Knight* v. *Hunt*, 5 Bing.,

432; *Jackson* v. *Duchain,* 3 T. R., 552; *Stone* v. *Compton,* 5 Bing. N. C., 142; Forsyth on Composition, 104. A subse-quent promise to pay, in accordance with a secret agreement, the amount claimed to be undischarged, is a promise without consideration, which will not maintain an action. " Contracts not founded on immoral considerations may be revived, though before there was no legal remedy. But the transaction is bottomed in fraud, which is a species of immorality, and not being available as such cannot be revived by a subsequent promise." *Cockshott* v. *Bennet,* 2 T. R., 760; *Ramsdell* v. *Edgarton,* 8 Met., 230.

3. This fraud is of such a character that it extinguishes the right of the creditor to set up :—1st. The insolvent's par-ticipation in it. This is held in all the decisions, because, when there is a secret agreement, the insolvent is from the nature of the case always a participant. 2d. Any other fraud on his part connected with the transaction. *Higgins* v. *Pitt,* 4 Exch., 312; *Blackstone* v. *Wilson,* 40 Eng. L. & E., 504; *Frost* v. *Gage,* 3 Allen, 560; and especially the case of *Mallalieu* v. *Hodgson,* 5 Eng. L. & E., 289, (*S. C.,* 15 Jurist, 817,) which is a case very closely analogous to the one at bar, and in which Justice ERLE well says, at page 290, that " the plaintiff does not prove the issue, that the deed which operates between him and the co-creditors as well as between him and the debtor was obtained by fraud, by showing that he was deceived by the debtor, and would not have executed the deed if he had not been so deceived." The courts put their conclusions upon the ground of public policy, and the rights of the other creditors. Each creditor consents to lose part of his claim in consideration that the others do the same. He is influenced to sign away his claim by the supposed in-vestigation of his co-creditors who have preceded him in the deed, and this is particularly true in the influence exercised by larger creditors upon their associates, whose loss is less in amount though often greater in hardship. The utmost good faith between the creditors is an important consideration of the contract, and requires that no one shall attempt to steal a preference over another. Besides it is a general principle

of law that a plaintiff who seeks to avoid or enforce a fraudulent contract, has no status in court if he has been guilty of fraud, though the defendant may have been *particeps criminis.* 2 Parsons on Cont., 279 ; *Nellis* v. *Clark*, 20 Wend., 24 ; *Smith* v. *Hubbs*, 10 Maine, 71. And this is true although the plaintiff was induced to enter into the contract by the misrepresentations of the defendant. *Bolt* v. *Rogers*, 3 Paige, 157. In the case at bar the initial fraud being the plaintiffs', and being a fraud not only upon the defendant but upon all his other creditors, and the composition having been completed by the defendant as found by the jury, the courts will leave the parties in *statu quo*, even if the transaction was tainted by the fraud of the defendant in matters connected with the contract. Here the plaintiffs have not only been guilty of a fraud on the other creditors in the first instance, but have received the same dividend upon their full claim which the other creditors have had; so that they have not only received the percentage provided for in the deed, but also have received twenty-five per cent. upon the amount fraudulently concealed from the other creditors. .

FOSTER, J. The rules and principles which govern contracts of compromise between an insolvent debtor and his creditors, whether in the form of composition deeds, as they are usually styled, or otherwise, are very thoroughly established and very generally understood. The utmost good faith must be observed by all parties ; any fraud taints and makes void the agreement, however technical or solemn may have been its form, or the mode of its execution. This, indeed, may be said of all contracts, but especially of those of this character. The nature of these transactions, and the situation of the parties, afford at once temptation and opportunity for committing fraud. The debtor in his statement is tempted to swell the amount of his liabilities, or lessen the amount of his assets, or both, in order to make a settlement at the lowest figure ; and the creditors, though purporting to act together, are found, not rarely, acting individually, and stipulating with the debtor for the payment of their claims, in whole or

in part, over and above the amount of their dividend. It scarcely need be said that any misrepresentation or concealment on the part of the insolvent renders his release void ; any contract by one creditor for a preference over his fellow-creditors is not only void, but, as determined by the later authorities, such contract in effect works a forfeiture of the claim to an otherwise honest dividend. The parties necessarily repose special trust and confidence in each other, and to repress the temptation ' to abuse or violate that trust and confidence the rule requiring the observance of entire good faith, the *uberrima fides* of the civilians, should be rigidly enforced. The case of *Doughty* v. *Savage*, 28 Conn., 146, is entirely in accordance with these views.

While these principles are abundantly plain, the application of them to the case before us requires care and discrimination, and is perhaps not free from difficulty.

The plaintiffs seek to recover of the defendant the balance of an indebtedness agreed to have been about $45,000 in the spring of 1868. The defendant was then unable to pay his debts in full, and on the 27th of March, 1868, he made a compromise with his creditors, to which the plaintiffs were parties, signing the composition deed of that date with the sum of $25,000 opposite their name. The defendant claimed that the plaintiffs had agreed to call this sum the amount of their debt, and by the terms of the deed it was to be discharged on the payment within a time specified of twenty-five cents on the dollar. To avoid the effect of this deed the plaintiffs proposed to prove that their signature to it was procured by fraud ; that the defendant had put a fictitious debt into his schedule to increase his liabilities, and had fraudulently concealed money and other personal property ; thus making his ability to pay to appear less than it really was.

The court charged the jury that if the plaintiffs intentionally concealed from the other creditors the fact of an indebtedness over $25,000, or induced other creditors to join in the composition by representing that the amount affixed to their name in the deed represented their entire claim, they could in

no case recover any of the balance ; that it would be immaterial what representations were made by the defendant to induce the plaintiffs to enter into the composition deed ; that if the plaintiffs by their conduct and words intentionally induced the other creditors of the defendant to believe, when they signed the composition deed, that the plaintiffs' debt was only $25,000, when in fact it was over $40,000, and thereby intentionally induced them to sign the same, such conduct was in law a fraud.

If the plaintiffs had set down the full sum due to them, and signed the composition deed without any agreement for a preference over other creditors, the fraud imputed to the defendant, if found proved, would certainly have rendered his discharge a nullity. The concealment of a portion of their indebtedness, it is said, is a fraud on the part of the plaintiffs, and concludes them from any relief against the fraud of the defendant. It should be borne in mind that in the court below it was not claimed by the defendant that the plaintiffs stated their debt to be $25,000 when it was in fact $45,-000 with any fraudulent intent or purpose towards the other creditors, or that there was any understanding or agreement that the plaintiffs should have any preference over other creditors, or should be paid, either in part or in whole, for the residue of the debt thus omitted on the composition deed. On the contrary, the defendant claimed that the plaintiffs agreed to call their debt $25,000, and to discharge the defendant upon receiving twenty-five per cent of that sum. The plaintiffs' claim upon this subject varied from that of the defendant, but as no question arises upon it the claim need not be stated.

Was the representation of these plaintiffs on the deed of composition, that their debt against the defendant was $25,-000, when in fact it was over $40,000, such a concealment as to be a fraud on the other creditors ?—What is fraud, is a question in answer to which as much perhaps has been written and spoken as in reply to the question of the Roman governor, "What is truth?" In the leading case of *Leicester* v. *Rose*, 4 East, 372, LE BLANC, J., page 383, says : "It

is agreed in all the cases that if there be a fraud upon the general agreement of all the creditors, by a particular stipulation with any of them, it is void ; and the only contest has been as to what shall be said to constitute such fraud. It has been supposed to consist in one stipulating ·to• receive more money than the others, but that is a fallacy ; for the real question is, whether he be put in a better situation than he stipulated for with the other creditors at large."—Lord ELLENBOROUGH, in the same case, p. 381, says : " Where the creditors in general have bargained for an equality of benefit and mutuality of security, it shall not be competent for one of them to secure any partial benefit or security to himself." In *Breck* v. *Cole*, 4 Sandf. S. C. Reps., 79,.a case fully argued and well considered, Mr. Justice DUER says: " Whenever a composition is made with creditors, any agreement or arrangement by which an advantage is secured to any one or more of the creditors which is denied to others, is a fraud upon the creditors from whom it is concealed, although it neither has nor can have the effect of depriving them of any portion of the amount which they have agreed to receive. It is in all cases the concealment of a fact which it was material for them to know, and the knowledge of which might have prevented them from assenting to the composition. *Britton* v. *Hughes*, 5 Bing., 466, per BEST, C. J. Every composition deed is, in its spirit, if not in its terms, an agreement between the creditors themselves, as well as between them and the debtor. It is an agreement that each shall receive the sum or the security which the deed stipulates to be paid or given, and nothing more, and that upon this consideration ·the debtor shall· be wholly .discharged from all the debts then owing to the creditors who signed the deed."

Applying the most stringent of these principles as tests of fraud ; applying any others more stringent, if such there be ; (see the case of *Bean* v. *Amsink*, Circuit Court Southern Dist. N. Y. per BLATCHFORD, J., Am. Law Register for June, 1873, p. 379 ;) the question recurs, was the representation of the plaintiffs, of their debt against the defendant at $25,000, on

the composition deed, when in fact it was $45,000, a fraud on the other creditors ? Was it a violation of any principle of law or public policy ? It was certainly calculated to excite suspicion that there was some secret agreement, by virtue of which the plaintiffs were to have some preference or advantage over the other creditors. If such was the fact it was a palpable fraud, and so utterly void. That a party cannot thus sever his claim, even where he has several demands on different accounts against an insolvent, was expressly held by Lord Kenyon in *Holmer* v. *Viner,* 1 Esp., 132. No such fact is proved here, no such intention even. The question depends solely on the character of the act. Was that *per se* fraudulent ? There was, in a certain sense, a concealment ; a keeping back, not a part of the price, but that part of the debt which the defendant claimed the parties had agreed should be remitted, merging the whole claim in the $25,000. It is no fraud for a creditor to forgive a debtor the payment of his debt. If insolvent himself he must not prejudice his own creditors by so doing. The law cannot pronounce this act fraudulent without proof, when it may have been honest. *Fraus nunquam presumitur.* There was concealment, true, but how did, how could, that concealment benefit the plaintiffs ? How was their situation, over that of the other creditors, improved by it ? Was the fact concealed at all material for the other creditors to know ? Had they known it, are there any conceivable reasons for supposing that they would not have signed the deed of composition with equal, if not even with greater readiness than they did without knowing it ?

But waiving these considerations, supposing the manner in which the plaintiffs stated their debt on this deed of composition constituted a fraud on the other creditors, does it lie in the mouth of this defendant to set up such fraud in answer to, and is it an available answer to, the claim of the plaintiffs that the defendant obtained their signature to this deed of composition by fraudulently misrepresenting both the amount of his debts and his means of paying them ? This fraud of the defendant, if perpetrated, would, as we have seen, make

his release null and void as between himself and each and all of his creditors ; and that fraud, it must be remembered, would be solely and exclusively the fraud of the defendant himself. Neither the plaintiffs, nor any other of the creditors, were, in any manner, participators in the fraud. It rendered the compromise between him and them null and void from the very beginning. These contracts of compromise may be viewed in different aspects ; first, as. a contract between the insolvent on the one part, and all his creditors jointly, considered as a unit, on the other ; next, as a contract between the insolvent and each creditor severally ; and lastly, as between the creditors themselves. If the contract, considered primarily, as between the insolvent and all the creditors, as a unit, be void in its origin, by reason of the fraud of the insolvent alone, can the insolvent, when sued by one of the creditors, set up and establish as valid against that creditor, the void compromise, because of some secret arrangement for a preference, entered into between him and that creditor, in fraud of the other creditors ? We think not. We know of no principle by which such a defence could be successfully made. We are referred to no case, our own researches have not enabled us to find a case, where such a defence, under such circumstances, has been made. The case of *Mallalieu* v. *Hodgson,* 16 Adol. & El. N. S., 690, (71 E. C. L., 689, and 5 Eng. L. & E., 279,) comes perhaps as near to the case before us as any one of the many that have been cited. There the defendants, being insolvent, had compromised their debts for six shillings and eight pence in the pound, but the plaintiff, not being present at the meeting, refused to sign the composition deed unless he was paid thirteen shillings and four pence in the pound upon part of the debt, and the other part in full. These terms being acceded to by the defendants, and the positive assurance given by them to the plaintiff that no other creditor was to have anything beyond the six shillings and eight pence, he signed the composition deed. He received the thirteen shillings and four pence on a portion of his debt, but the notes given for the residue, which was to be paid in full, not being paid, he

sued for his original demand. It appeared on the trial that other creditors besides the plaintiff had been preferred, and had received more than the six shillings and eight pence. The Court of Queen's Bench, held by WIGHTMAN, COLERIDGE, and ERLE, Js., decided that the plaintiff was not entitled to recover. The decision was by two judges against one, WIGHTMAN, J., dissenting. He said: "It appears to me that it is no answer, upon this issue, [whether or not the release was obtained by fraud,] to show that the plaintiff himself had also contracted for preference, in fraud, not of the defendants, but of the other creditors. * * * * It can hardly be allowed the defendants to set up a counter fraud by them and the plaintiff, by which they colluded to deceive other persons, as an answer to a charge of fraud practiced by the defendants upon the plaintiff, which would have the effect of depriving him of part of his original right." The other justices, COLERIDGE and ERLE, making a majority of the court, put their decision for the defendants on grounds which seem to us to sustain the right of the plaintiffs in this case to recover. They held that, the plaintiff having obtained a preference for himself not vitiating the release as against himself, the fact that the defendants had also given a preference to others, was no fraud upon him. COLERIDGE, J., says : " The whole consideration for his, the plaintiff's, release, is the fraudulent preference promised to himself, and the withholding any such preference from other creditors. He cannot allege the former as a fraud on himself to vitiate the release, for he is *particeps fraudis*, and the latter is so entirely mixed up with it, deriving all its materiality from it, that the same disability seems to me to attach to it." ERLE, J., says : " A deed is not to be avoided on the ground of a fraudulent misrepresentation unless the matter misrepresented was a material inducement to the execution of the deed,—in other words unless the matter was such as, in case of a simple contract, would be substantially the consideration for the contract. Here the misrepresentation relied on is not of this nature ; the exclusion of others from a preference is no direct advantage to the plaintiff, and the whole stipulation

for a preference, being a fraud on the part of the plaintiff towards other creditors, no part of it can be legally relied on by him as forming a material inducement for his deed ; it could not form any part of a legal consideration. Also as in a composition deed, the principal parties to a stipulation for a release are the creditors who mutually contract, each with the rest of the body, any misrepresentation of the debtor to any one of the creditors, cannot be relied on by that one as the material inducement for his stipulation with the others. * * * The plaintiff does not prove the issue, that the deed which operates between him and them, as well as between him and the debtor, was obtained by fraud, by showing that he was deceived by the debtor, and would not have executed the deed if he had not been so deceived."

The application of these principles to the case at bar is easily made. These learned judges of the Queen's Bench were of opinion that where an insolvent debtor had stipulated to give a preference to one creditor, assuring him that no other creditor was thus favored, the giving of a preference to others was not a fraud on such creditor, and so the release signed by such creditor was not thereby made void ; that the whole stipulation for a preference, being a fraud on the part of the plaintiff towards other creditors, no part of it could be legally relied on by him as forming a material inducement for signing the deed. That a statement of fictitious debts, and a misrepresentation as to the amount of the assets, by the debtor, as claimed in this case, would constitute fraud, is beyond dispute ; not fraud against one only, or a portion of the creditors, or by which one only was deceived, but against the whole ; not fraud with which the plaintiff, or any one of the creditors, in the language of Mr. Justice COLERIDGE, was "mixed up," but solely the fraud of the plaintiff.

Now we think that such fraud avoids a release, and that it is not answered by showing simply that the plaintiff stated his debt at $25,000, when it was over $40,000, even supposing, as we now do, that this statement was a fraud. The case of *Mallalieu* v. *Hodgson*, from which we have largely quoted, as it is an important one, fully sustains, as we believe, the same views.

The conclusion to which we come, therefore, is, that the act · of stating the plaintiff's debt, on the deed of composition, to be $25,000, was not, in the absence of all proof on the subject, *per se* a fraud. But if it be regarded as a fraud in law, it would not be a sufficient answer to the fact that the defendant procured the signing of the deed of composition by fraudulently misrepresenting, in the statement of his condition, the amount of his assets and liabilities. The instructions to the jury in the court below. upon the other questions arising on the record, we are inclined, as at present advised, to sanction, but in regard to these we have been considering, we think the judge erred. A new trial is therefore advised.

In this opinion the other judges concurred.