## Case No. 1,942.

BROOKMIRE et al. v. BEAN.

[3 Dill. 136;[1] 12 N. B. R. 217; 2 Cent. Law J. 265.]

Circuit Court, E. D. Missouri. 1875.

BANKRUPTCY — COMPOSITION AGREEMENT — RIGHT OF CREDITOR WHO HAD STIPULATED FOR A SECRET ADVANTAGE TO PROVE HIS ORIGINAL DEBT IN BANKRUPTCY.

A creditor, having demanded payment in full in advance as a condition of consenting to sign a composition agreement of the debtor to pay all his creditors seventy cents on the dollar, was held liable to repay the amount to the assignee in bankruptcy. 2 Dill. 108 [Bean v. Brookmire, Case No. 1,170]. Subsequently, on paying back the amount to such assignee of the debtor, the creditor sought to prove his original debt in bankruptcy, the composition having failed: *Held*, under the circumstances,

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

that he was entitled to establish his debt and receive dividends thereon.

[Appeal from the district court of the United States for the eastern district of Missouri.]

In bankruptcy. The firm of Brookmire & Rankin sought in the district court to establish a claim for $1,436.02 and interest, against the estate of Charles S. Kintzing, bankrupt, for merchandise sold and delivered, and alleging that the note given by Kintzing & Co. for the debt "was cancelled on the theory of its payment, which was an error." The assignee in bankruptcy resisted the claim. The parties stipulated below, "that the question for determination by the district court was whether, upon the facts as found, and the law as declared by the circuit court in the case of Bean v. Brookmire [supra], Brookmire & Rankin have a provable claim against the estate of Kintzing, on account of the note referred to in that case, the decree rendered therein having been satisfied by Brookmire & Rankin." The district court rejected the claim, and Brookmire & Rankin appeal. [Reversed.] In this court the appeal was submitted upon the same stipulation. Before the following opinion was pronounced, the appellants, with leave of court, dismissed their appeal, with a view, as stated, to file a bill of review of the decree by which they were compelled to pay to the assignee the amount they had received from the bankrupt.

G. M. Stewart, for appellants.
Edmund T. Allen, for assignee.

DILLON, Circuit Judge. The controversy between the parties has already, in different forms, been several times before this court. Bean v. Brookmire [Cases Nos. 1,168–1,170]. In the case first cited, the assignee sued to recover back the $1,436.02 which had been paid by the bankrupt to Brookmire & Rankin, and this recovery was sought on the ground that the payment was illegal preference under section 35 of the bankrupt act, but as it was paid more than four months before the bankruptcy, it was held that the action was not maintainable. After that decision was made, the assignee brought a bill in equity to recover back this same sum of $1,436.02, on the ground that it was fraudulently paid by the bankrupt to Brookmire & Rankin [supra]. On the merits, this suit was subsequently decided against Brookmire & Rankin [supra], and they paid the amount of the decree to the assignee. They now seek to prove the original indebtedness or cause of action, and the question is whether, upon the facts found, and the law stated in the case as reported in 2 Dill. 108 [Case No. 1,170], they are entitled to have their claim established, so as to share in the dividends of Kintzing's estate in bankruptcy. The facts as there found need not be here restated at length.

The question presented by this appeal has occasioned me much perplexity. The case is so peculiar as to make it difficult to ascertain the legal principles which should control its decision, and I determine it upon its own circumstances, and agreeably to what seems to me the substantial rights and equities of the parties, without undertaking to announce any rule of general or universal application.

Let us briefly recur to some of its leading features. And first, the original debt of Brookmire & Rankin against the bankrupt is confessedly just. It was for goods sold and delivered. On this debt Brookmire & Rankin have been paid nothing. The amount they received they have been compelled to pay back, on the grounds stated in 2 Dill. 108 [Case No. 1,170]. It will be recollected that they had refused to go into the compromise, and had commenced suit against Kintzing in the state court. Laflin, acting for Kintzing, went to Brookmire & Rankin, and representing (according to the weight of the testimony) that the money to pay the note had been raised by himself and Kintzing's friends, or by the latter, paid them the money on their delivering him the note with the indorsement: "We authorize S. H. Laflin to sign for us. Brookmire & Rankin." They entered the note on their books as "sold" to S. H. Laflin. Under the authority thus given, Laflin signed the name of Brookmire & Rankin to the compromise agreement to settle at seventy cents on the dollar. It is stated in the report—2 Dill. 114 [Case No. 1,-170]—that "the evidence favors the view that the defendants (B. & R.) at first objected to making the indorsement, and finally did it without much reflection, and upon Laflin's assurance that it would be all right, and he would answer that the note should never come back or give them any further trouble. They did not seek Laflin or Kintzing, but were standing aloof from the proposed arrangement for a compromise, and pursuing (by suit in the state court) their own remedy against the debtor." It is further observed—2 Dill. 114 [Case No. 1.170]—that "the circumstances of the debtor were such that they could not obtain payment under a judgment against him, which would not be liable to be defeated by the bankrupt act." Tested by the subsequent decision of the supreme court, in Wilson v. City Bank, 17 Wall. [84 U. S.] 473, this last observation is erroneous.

The compromise finally miscarried, as all the creditors did not unite in it, and all the other creditors were, in consequence, remitted to their original position, and to the right to claim one hundred cents on the dollar.

Now, why shall Brookmire & Rankin not be placed upon the same footing with the other creditors? As the compromise failed, there is no outstanding covenant in force against them, whereby they have agreed to take less than the face of their demand or to

release it, and this material circumstance distinguishes it from the case of Mallalieu v. Hodgson, 16 Adol. & E. (N. S.) 689, so strongly relied on by the assignee. There the composition into which the plaintiff had entered, had been carried out, and the plaintiff "had received the composition, and yet was seeking to gain a further exclusive advantage to himself and in fraud of the creditors, by suing for the balance of his original debt after allowing for the composition and the value of the (secret) preference" (Id. 712); and the court held that his release of the debt, made on entering into the composition, was binding upon him, and an answer to his claim to recover on the original demand. It was this release which defeated the recovery; but in the case before me there is no such release, and the composition fell through because all of the creditors did not come into the arrangement.

It is urged that the debt of Brookmire & Rankin is forfeited by their conduct in authorizing their names to be signed to the composition agreement. 2 Dill. 108 [Bean v. Brookmire, Case No. 1,170]. That decision did not go upon the ground that any specific provision of the bankrupt act had been violated, but upon the general ground that Brookmire & Rankin had secured full payment as a condition of signing the composition articles, and had obtained it oppressively, so that the debtor could have recovered back the amount if he had not gone into bankruptcy, and this right devolved upon the assignee by reason of the bankruptcy.

That decision rested largely upon Atkinson v. Denby, 6 Hurl. & N. 778, affirmed 7 Hurl. & N. 934. Of course, the act of one creditor stipulating for a secret advantage to himself is a fraud upon the other creditors, but in what manner, in the absence of bankruptcy, these other creditors could have taken advantage of the fraud, and to what extent they could have compelled Brookmire & Rankin to refund on a creditor's bill, are questions by no means easy of solution. The conclusion in 2 Dill. 108 [Case No. 1,170], was supposed to be strengthened by the circumstance that the assignee in bankruptcy represented the rights of the creditors as well as the bankrupt, but the decision essentially rests upon the principle of Atkinson v. Denby, and the cases which it follows. In the case last mentioned (Atkinson v. Denby), it is to be especially remarked that the composition was paid, and paid to the defendant as well as to the other creditors; and the action was not to recover the whole amount paid, but only the £50 paid by the plaintiff in excess of the composition, and in excess of what the other creditors received. This is obviously a very different case from the one before the court.

The cases cited by the assignee's counsel, which I will not review in detail, undoubtedly establish this principle, viz: that a

"stipulation by a creditor for a secret advantage is altogether void; not only can he take no advantage from it, but is also to lose the benefit of the composition." Erle, J., 16 Adol. & E. [N. S.] 689, supra; Howden v. Haigh, 11 Adol. & E. 1033; Frost v. Gage, 1 Allen, 262, 3 Allen, 560. He loses all rights which depend upon the illegal or fraudulent agreement, and if, in this case, Brookmire & Rankin were seeking to enforce a promise or claim based upon, or arising out of, the composition articles, it would logically result, from the prior decision and the principle of law in relation to composition agreements established by the authorities, that they could not succeed. But such is not their case. The composition failed and was not carried out, and, therefore, never became binding upon any of the creditors. They were remitted, by reason of such failure, to their former rights; and the present claim is based upon the original consideration, and not upon the composition deed. Unless it is forfeited or barred, it must be allowed.

It is urged, in argument, that to permit Brookmire & Rankin now to prove the claim, is inconsistent with the case in 2 Dill. 108 [Case No. 1,170], in which they were held liable to pay back the money received on this same debt. But not so. To have allowed them to retain the full amount of their debt would have given them an unjust advantage over the other creditors, and as this advantage was unfairly obtained, the court held that they must pay back the money. If the compromise had been carried out, perhaps the court would have limited the recovery to the excess which they received over the other creditors. That suit compelled them to repay the money they had unfairly gained. This put the parties in statu quo. The debt of Brookmire & Rankin revived against the bankrupt, and it may be established against his estate. The effect is equitable. It puts all creditors upon an equality. If Brookmire & Rankin had been active in steps to procure full payment, and had positively designed to commit a fraud. I should have felt more reluctance in coming to the conclusion that they should be allowed to establish their debt in bankruptcy. They have done nothing which justly works a forfeiture of their original debt, and if there is any such principle in the law as that fraudulently or illegally entering into a composition agreement works a forfeiture of the original debt, when the composition fails, which I very much doubt, I think that the present case is one to which that principle should not be applied. Reversed.

NOTE [from original report]. The recent amendments to the bankrupt law provide, in a very bungling and cumbersome manner, for the execution of compositions between the bankrupt and his creditors, under the supervision of the bankruptcy court. Hence the obligations of creditors to the debtor, and to each other, which the law itself, independently of the bankrupt act, imposes upon the parties to a composition, become, at present, of more than speculative importance. It would seem to a fair-minded man, an exceedingly unfair and improper, not to say dishonest, proceeding, if one among several creditors, all of whom had agreed among themselves and with their debtor, to accept, in view of his misfortunes, a part only of their demands, should secretly, and as a condition of signing the agreement, exact an amount in addition to what he and the others had agreed to take. Such exaction might take from the debtor the little stipend which the other creditors had intended should remain to him for the support of a dependent family, or with which to begin life anew; or, in case the composition were, as usually compositions are, payable in installments, by crippling the present means of the debtor, render it impossible for him to comply with its terms. In either view, the purpose of the honest creditors, who execute and carry out their part of the agreement in good faith, is thwarted. They fail to provide, as they had humanely intended, for the necessities of the debtor; or they fail to secure that portion of their claims which, according to the composition, they were to receive. This result, moreover, is brought about by one who apparently joined with them in the negotiation, and who may ostensibly have been most urgent in his endeavors to relieve the unfortunate debtor. He has solemnly executed the composition agreement with one hand, and held his other in position to receive his price. Viewed in the light of these considerations, one is hardly prepared to be told that frauds in the execution of composition deeds are among the most numerous of any of which we have record in the reports. Creditors are, as a class, men of means, of education, of business habits, and most of them are merchants. It is not creditable to the merchants of Great Britain that for two hundred years past the English reports are replete with decisions touching such frauds. Every lawyer in this country, who has had much experience in such matters, knows that it is a difficult thing to persuade a merchant that it is anything wrong to get all he can out of a debt, whether in fraud of a composition or not. Perhaps it is not too much to say that eight out of every ten compositions with creditors made in this country are affected (and effected) by the fraud of some one or more of the creditors. It is not the purpose of this note to more than hint at the history of this branch of the law. The cases, if collected, would make a large volume, and a very useful one at this time.

The chancery courts at first undertook to relieve debtors who had been thus oppressed by restraining suits at law against them upon notes or securities given in fraud of compositions, and by decreeing the cancellation of such notes and securities. In reply to the plea that the plaintiff in such equity causes was a particeps criminis, and equity should not interfere, the courts said that he was in delicto, but not in pari delicto. Next the court at law allowed the debtor to defend against suits brought by the exacting creditor upon his notes and securities, on the ground that such notes and securities, having been exacted in fraud of a composition, were invalid as against public policy. In the case of Howden v. Haigh, 3 Perry & D. 661, 11 Adol. & E. 1033, 1840,— where the plaintiff, before signing a composition deed, by which the creditors of the defendant agreed to take the defendant's bills at long dates for their respective debts, stipulated, without their knowledge, for a bill of exchange to be indorsed to him by the defendant for a further sum, it was held that the whole agreement between the plaintiff and defendant was void, as being fraudulent upon the other creditors, and that plaintiff could not recover upon

the defendant's bills for the amount of the composition money, even although he had received nothing on the bill indorsed to him by the defendant. In brief, the creditor forfeited his entire debt by the fraud, not only that which he stipulated for in fraud of the composition, but that which he stipulated for by its terms. In the case of Wells v. Girling (1819) 1 Brod. & B. 447, 4 Moore, 78, A, a trader, in embarrassed circumstances, being indebted to plaintiff for money lent, and goods, plaintiff promised to induce A's creditors to agree to a composition, on condition of A's giving the plaintiff a promissory note for the money lent, signed by A and another as security; the note was given by A and signed by defendant as security. The plaintiff and A agreed to keep the matter a secret from A's creditors, and plaintiff endeavored, but in vain, to accomplish a composition with them: *Held*, that the transaction was void, and the plaintiff could not recover on the note against the defendant. In the report of this case in 4 Moore, 78, Dallas, C. J., said: "This agreement, therefore, was void in its creation, on the ground of fraud, and if it was void in its inception, it cannot cease to be so on account of events which have happened afterwards. It has, however, been most strenuously objected that the plaintiff is entitled to recover, as the deed of composition was not carried into effect. Still, however, the transaction was fraudulent ab initio." The last case was against the security upon the note, but can it be doubted that the same result would have been reached had A, the principal debtor, been the defendant, and is not this an authority for the proposition that a creditor, in committing a fraud upon a proposed composition, forfeits his entire demand, even though the composition be not carried into effect?

So again, to like effect, in the Matter of Cross (1848) 4 De Gex & S. 364, it was held that Gibbons, the creditor who had signed a composition for one-half of his debt, and fraudulently received security for the remainder, forfeited his entire demand, even though he did not get his one-half in accordance with the terms of the composition. In this case Mr. Commissioner Fane uses the following language: "The fraud of which Gibbons was guilty, that of drawing in other creditors to submit to a loss of ten shillings in the pound by holding out that he, one of the largest creditors, would submit to a similar loss for the general benefit, and yet secretly stipulating for a payment in full, is a fraud only too common; and it is but just toward the public that those who are guilty of such frauds should, when detected, suffer a loss as great as the unjust gain they sought. If such persons, on being detected, might still rely on the right they stipulated for, they would, in case of nondetection, obtain a great gain, and in case of detection suffer no loss, which would be of evil example. If they could go still further—if, alleging that the debtor was particeps criminis, and on that ground insisting that the deed should not operate in his favor, they could fall back on their original demand, the result would be more pernicious still, for it would be to injure all the other creditors, and to make the delinquent's fraud a source of pecuniary advantage to him. In my opinion, Gibbons, in endeavoring to overreach the other creditors, has only overreached himself, for he has ceased to be a creditor of the bankrupt for any sum whatever—he is not a creditor for the £1,600, for he has released that demand; nor is he for the £800, because no right accrues under a fraudulent deed in favor of the fraudulent contractor." The consideration thus succinctly stated by Mr. Fane, together with the cases above cited, tend very strongly to uphold the proposition, doubted in the principal case, "that fraudulently or illegally entering into a composition agreement works a forfeiture of the original

debt, when the composition fails." The crafty creditors of England had learned, by an unbroken series of decisions, that notes and securities taken in fraud of compositions could not be enforced except at the will of the debtor, and their next expedient to evade the law was by exacting a cash payment for the additional amount. But the case of Atkinson v. Denby (1861) 6 Hurl. & N. 778, on appeal (1862) 7 Hurl. & N. 935, determined that money so paid could be recovered by the debtor himself, upon the ground that there is no "difference in principle between the giving a £50 Bank of England note, and a promissory note for £50, payable on demand." As the debtor could resist payment of the promissory note, he ought to be allowed to recover the money.

The following are among the many cases relating to frauds upon composition deeds, and not mentioned above: Cockshot v. Bennett, 2 Durn. & E. [Term R.] 763; Leicester v. Rose, 4 East, 372, 383; Higgins v. Pitt, 4 Exch. 322; Breck v. Cole, 4 Sandf. 79; Smith v. Bromley, 2 Doug. 696; Smith v. Cuff, 6 Maule & S. 160; Mare v. Sandford, 1 Giff. 295; Clay v. Ray, 17 C. B. (N. S.) 188; Partridge v. Messer, 14 Gray, 180; Case v. Gerrish, 15 Pick. 49; Doughty v. Savage, 28 Conn. 146; Huntington v. Clark, 39 Conn. 540; Pinneo v. Higgins, 12 Abb. Pr. 334; O'Shea v. Collier White Lead & O. Co., 42 Mo. 397; Way v. Langley, 15 Ohio St. 392; Horton v. Riley, 11 Mees. & W. 492; Sadler v. Jackson, 15 Ves. 52; Jackman v. Mitchell, 13 Ves. 581; Jones v. Barkley, 2 Doug. 695, note; Russell v. Rogers, 10 Wend. 473, 15 Wend. 351; Carroll v. Shields, 4 E. D. Smith, 466; Lawrence v. Clark, 36 N. Y. 129; Alsager v. Spalding, 4 Bing. (N. C.) 407; Wood v. Barker, 11 Jur. (N. S.) 905; Payne v. Eden, 3 N. Y. Term R. [Caines] 213; Yeomans v. Chatterton, 9 Johns. 294; Wiggin v. Bush, 12 Johns. 306; Tweberry v. Miller, 19 Johns. 311; Mawson v. Stock, 6 Ves. 300; Geere v. Mare, 2 Hurl. & C. 339; Bean v. Amsinck [Case No. 1,167]; Coleman v. Waller, 3 Younge & J. 212; Turner v. Hoole, Dowl. & R. N. P. 27, E. C. L. 418; Constanteine v. Blache, 1 Cox, Ch. 287; Amsinck v. Bean [22 Wall. (89 U. S.) 395].